# THE STATE v. JOHN SCHENK, Plaintiff in Error.

### Division Two, December 19, 1911.

1. **INFORMATION: While Indictment Pending: Seduction Under Promise of Marriage: Carnal Knowledge.** Seduction. under promise of marriage is a different offense from carnal knowledge of an unmarried female of previous chaste character between the ages of fourteen and eighteen years; and defendant is not, for that reason, entitled to have quashed an information charging the last offense filed while an indictment charging the other was still pending.

2. ————: ————: **While Indictment is Pending: Dismissal before Trial.** The words of the statute (Sec. 5055, R. S. 1909), declaring that "the mode of procedure which shall be first instituted by the filing of the indictment or information for any offense shall be pursued to the exclusion of the other, so long as the same shall be pending and undetermined," at most mean only that the information shall not be tried while the indictment is pending. So that, even where the offense charged in each is the same, if the indictment is dismissed before the information is tried, the statute is satisfied, and the information should not be quashed.

3. **STATUTE: Amendment: Afterwards Repealed.** Where a statute is amended and afterwards the original act is repealed, the repeal operates upon the amendment also. Especially should this be the rule where the repealing act covers the whole subject of both the original and amendatory acts.

4. ————: ————: ————: *Prosecution by Information: Preliminary Hearing.* In 1905 the Legislature amended article 3 of chapter 16 of the Revised Statutes of 1899 by adding a new section thereto to be known as section 2476a,, providing that no information should be filed charging a capital offense until the accused shall first have been accorded a preliminary hearing. In 1907 the Legislature amended this section 2476a by changing the words "capital offense" to "felony." In 1909 the Legislature, without referring to the Act of 1907, repealed section 2476a, "as set forth on pages 132 and 133 of the Laws of 1905," and "enacted in lieu thereof" a new "section 2476a," in which the words "capital offense" only are retained, and which covers the whole subject with reference to preliminary hearings prior to the filing of an information. *Held*, that the Act of 1907 was repealed by the Act of 1909, and an accused who is not charged with a capital offense is not entitled as a matter of course to a preliminary hearing before the prosecuting attorney can file an information against him in the circuit court.

5. **STATUTE: Enacted at Revising Session: When Effective.** A new statute enacted at a revising session of the General Assembly in 1909, without an emergency clause, went into effect within ninety days after adjournment, and not on November 1, as did the official repository or compilation of bills of existing laws that were published in the form of the Revised Statutes. The Act of 1909, repealing the Law of 1905 requiring a preliminary hearing in capital cases before an information is filed and enacting a new section in lieu thereof, went into effect in ninety days after the adjournment of the Legislature, and not on November 1. This is shown not only by an examination of the declaratory Act of 1909, but of all similar acts since the Constitution of 1875 was adopted and of those acts in force at the time of its adoption.

6. ———: **Legislative Construction: Constant Acquiescence for Long Years.** A construction put upon a similar statute by the courts, and the acquiescence therein by the Legislature at previous sessions, and by the other departments of the government, for a period of over thirty years, as to when a new statute enacted by the General Assembly at a revising session goes into effect, while not binding, should have serious consideration in arriving at the meaning of the apparently inconsistent statutes in hand.

7. **CARNAL KNOWLEDGE: Evidence: Broken Promise of Marriage.** Testimony of prosecutrix in a carnal knowledge case that in February prior to the alleged offense in April defendant promised to marry her, that the promise was broken and she subsequently forgave him before the offense was committed, was incompetent. That promise of marriage was entirely disconnected with the offense, and besides was not an essential ingredient of the offense. But it was competent for the State to bring out the entire conversation at the time of the alleged sexual relation, even if it included a promise of marriage, as a part of the *res gestae*.

8. ———: **Two Separate Acts: Instruction: Of Previous Chaste Character.** The information charged that defendant on September 26 had carnal knowledge of a certain female of previous chaste character, between the ages of fourteen and eighteen years. She testified that there were two acts of sexual intercourse, one in April and the other in September. *Held*, that she was not of chaste character in September, and an instruction directing the jury to convict if they found that the offense charged was committed "at any time within three years next before the 21st day of September," was erroneous. The instruction should have restricted the jury to a consideration of the alleged act committed in April.

9. ———: **Sufficiency of Evidence.** The court will not usurp the province of the jury; and where the story of the prosecutrix, though improbable in many respects, if believed, makes a case for the jury, the court will not say that the case should not be submitted to the jury for its verdict.

Error to Knox Circuit Court.—*Hon. Chas. D. Stewart,* Judge.

REVERSED AND REMANDED.

*L. L. Cotley* for plaintiff in error.

(1) The indictment offered in evidence on the hearing of the motion to quash, was for the same offense as that charged in the information, although the punishment under the indictment may have been different from that under the information. The punishment, however, might have been the same under the indictment (Sec. 4478), as under the information (Sec. 4472). The offense was the same under both charges, that is, sexual intercourse between the same parties at the same time and place. Bouvier's Law Dictionary, Webster's Unabridged Dictionary, "Offense." The offense mentioned in the statute is the commission of the wrongful act. The punishment which the Legislature prescribes for the offense is quite a different thing. Usually and generally there are different grades of punishment provided for the same offense, but there can never be but one punishment for the same offense. Under the statute (Sec. 5055), the State was bound to elect as to whether it would proceed by indictment or information in this case. Having first instituted its procedure by indictment it was bound to pursue that method to the exclusion of the procedure by information, as long as the indictment was pending and undetermined. The record shows the indictment was pending and undetermined when the information was filed. The State was also bound to elect as to whether it would proceed under section 4478, for seduc-

tion under promise of marriage, or under section 4472, for carnal knowledge. The indictment for seduction under promise of marriage was an election by the State to proceed under section 4478. It is manifest that a conviction under the charge in the indictment would have been a bar to any further prosecution under section 4472, for carnal knowledge. Wharton's Criminal Law (3 Ed.), page 257. State v. Hamey, 168 Mo. 200; State v. Smith, 190 Mo. 720. It must follow that the State having elected to prosecute the defendant by indictment for seduction under promise of marrige, could not lodge another charge for the same offense by information for carnal knowledge, while the former charge was pending and undetermined. The Act of 1907 (Laws 1907. p. 243), is an amendment of said Act of 1905, making it apply to all felony cases. The amendment consists in striking out the words "capital offense," and inserting in lieu thereof the word "felony." The Act of 1905 (Laws 1905, pp. 132 and 133), is a new section requiring preliminary examinations in all capital offenses prior to filing the information by the prosecuting attorney. The Act of 1907, (Laws 1907, p. 243) is an amendment of said Act of 1905, making it apply to all felony cases. The amendment consists in striking out the words "capital offense," and inserting in lieu thereof the word "felony." The Act of 1909, Laws 1909, p. 460, expressly and specifically repeals the Act of 1905, and then enacts anew said Acts of 1905, except that the new Act of 1909, is with reference to article 2, chapter 16, R. S. 1899, whereas the section repealed had reference to article 3, chapter 16, of Revised Statutes of 1899. . The reference in the Act of 1905 to "article 3" was probably intended to be to "article 2," which deals with preliminary examinations. To make this correction was probably the reason for the re-enactment of the Act of 1905. The Act of 1909 adds a proviso to the new section which was not a part of the Act of

1905. The Act of 1907, which provides for preliminary examinations in felony cases, was not repealed by the Act of 1909. The Act of 1909 recites that it repeals the Act of 1905, and to be certain that it refers alone to that act the title and date of approval of said act is set out, and then, finally, to make assurance doubly sure, it recites that it is the act as set forth on pages 132 and 133 of the Laws of 1905 that is hereby repealed. From these recitals it is manifest that the Legislature never intended to repeal the Act of 1907 by the Act of 1909. The proviso to the Act of 1909 is further evidence that it was not intended to repeal the Act of 1907. These two acts are not inconsistent with each other; and can be so construed as to permit both to stand. Evans v. McFarland, 186 Mo. 723; State ex rel. v. Wilder, 197 Mo. 27. The two statutes should be so construed as that both may stand if possible. Manker v. Faulhaber, 94 Mo. 439; State ex rel. v. Walbridge, 119 Mo. 383; State ex rel. v. Wells, 210 Mo. 620; State ex rel. v. Rinke, 140 Mo. App. 662. (3) The Act of 1909, Laws 1909, p. 460, is a part of the Revised Statutes of 1909, section 5056; was enacted as a revision bill and, consequently, did not take effect until November 1, 1909. The Act of 1907 was, therefore, in force in any event, until said Act of 1909 went into effect November 1, 1909, as a part of the revision. In that view, the defendant was entitled to a preliminary examination prior to the filing of the information against him, September 21, 1909. The Revised Statutes take effect by reason of declaratory act, Sec. 8094, R. S. 1909, on November 1 of the year of the revision session. Haskel v. Sells, 14 Mo. App. 91; Hausen v. Insurance Co., 66 Mo. App. 29; Westport v. Smith, 68 Mo. App. 63; Whitaker v. Insurance Co., 133 Mo. App. 664; State v. Brassfield, 81 Mo. 151; State ex rel. v. Edwards, 136 Mo. 360. The Act of 1909 as found on page 460, Laws 1909, is simply a re-

238 Sup.—28

vision of the statute in relation to preliminary examinations, and the time it shall take effect and go into operation must be governed by section 8094 of the declaratory act. The Legislature may provide that laws shall take effect at a date later than the ninety days fixed by the Constitution. State v. Orrick, 106 Mo. 117. (4) The court erred in permitting the prosecuting witness to testify, against the objections of the defendant, that she was seduced by the defendant under promise of marriage. It was evident that the prosecuting witness had materially weakened the State's case, on her cross-examination, by admitting she voluntarily went to the defendant's house twice and had sexual intercourse with him. It was to counteract this damaging testimony, that caused the State to bring out evidence of a prior promise of marriage. The evidence of a promise of marriage was incompetent, because it had no tendency to prove the charge for which the defendant was being tried under the information. State v. Pruett, 144 Mo. 92. The court admitted the evidence of a promise of marriage, and in so ruling said he did not want it to be considered as evidence of a promise of marriage. In the case of State v. Minor, 193 Mo. 597, illegal testimony was introduced and was ordered by the court to be stricken out. This court said that was not sufficient. An instruction to exclude illegal evidence admitted in a criminal case will not cure the error of admitting it, if it was of a character prejudicial to the defendant. State v. Mix. 15 Mo. 153; State v. Hopper, 71 Mo. 425; State v. Fredericks, 85 Mo. 145; State v. Huehner, 93 Mo. 193; State v. Thomas, 99 Mo 235; State v. Spivey, 191 Mo. 87; State v. Martin, 229 Mo. 641. (5) The court erred in overruling defendant's demurrer to the evidence, offered at the close of all the evidence in the case. (6) The court erred in giving instruction numbered one on the part of the State. This instruction was copied from State v. Knock, 142 Mo.

515, but the facts in that case are radically different from this case. It directed the jury to find defendant guilty if at any time in three years next before the 21st day of September, 1909, the defendant did feloniously assault and carnally know the witness, etc. In the Knock Case the State relied on five different acts of carnal knowledge, any one of which, according to the record in that case, would have been sufficient to have justified a conviction. In other words, it was not a case in which the State was limited to the date alleged in the indictment. In the case here the proof was limited to the date alleged in the information. It was that date or nothing, according to the evidence, and, hence, the instruction should have been confined to the date alleged in the information. The instruction was a roving commission to find the defendant guilty without regard to the evidence in the case. The case having been tried solely with reference to the date alleged in the information, the defendant could not ask the State to elect because there was no conflict as to other dates testified to. This instruction was too broad, under the evidence in this case, and was, therefore, prejudicial. Under said instruction the jury was authorized to convict the defendant "on general principles." State v. Palmberg, 199 Mo. 248; State v. Pruitt, 202 Mo. 52.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for defendant in error.

(1) Appellant's counsel filed motion to quash on the ground that an indictment for the same offense was pending at the time the information was filed, and that appellant was not accorded a preliminary hearing prior to the filing of the information. The first ground is based upon the clause in Sec. 2576, R. S. 1899. The indictment offered in evidence in connection with the motion was for a wholly different offense. The in-

formation here was drawn under Sec. 1838, R. S. 1899, as amended (Laws 1907, p. 230), and the indictment offered in evidence was drawn under Sec. 1844, R. S. 1899. The elements of the offenses defined by these two sections are different from each other in material respects. The punishments prescribed differ. The evidence which would support this information would not be sufficient to support the indictment mentioned. State v. Harvey, 168 Mo. 199; State v. Taylor, 171 Mo. 473. The second ground of the motion is based upon the Act of 1907, Laws 1907, p. 243, amending the Act of 1905 (Sec. 2476a) so as to require that every defendant in a case of felony be accorded a preliminary hearing before the filing of an information against him. By the Act of 1909, Laws 1909, p. 460, the Act of 1905 (Sec. 2476a) was repealed and a new section enacted in lieu of that act which new section restricts the requirement as to preliminary hearings to capital cases. The Act of 1909 does not refer to the 1907 amendment of the Act of 1905. The amendment of 1907 to the Act of 1905, was, by its enactment, incorporated in and made a part of the Act of 1905, sec. 2476a. Epperson v. Ins. Co., 90 Mo. App. 438; Kamerick v. Castleman, 21 Mo. App. 590; 26 Am. & Eng. Ency. Law, pp. 703, 704, 706, 712. And the repeal of the Act of 1905 by the Act of 1909, carried with it, therefore, the repeal of the 1907 amendment to the Act of 1905; 26 Am. & Eng. Ency. Law, pp. 744, 735; Lewis's Sutherland, Statutory Const., sec. 271 (156), 273; Sedgwick, Constr. Stat. & Const. Law, p. 96, note; Endlich on Interp. Stats., sec. 44, p. 58. The rule of construction is that if an act be amended, and subsequently to such an amendment the section of the original statute be repealed, the amendment is thereby repealed. Kamerick v. Castleman, 21 Mo. App. 590; Black on Interp. Laws, Secs. 130-132. (2) The Act of 1909 became effective on August 16, 1909, ninety days after the adjournment of the Legislature. Sec. 36, art. 4, Constitution; Sec.

4178, R. S. 1899. The Act of 1909, Laws 1909, p. 460 (Sec. 5292, R. S. 1909) was in force on September 1, the date of the filing of the information upon which appellant was tried and convicted. The act was not a revision measure, but a new and independent act passed at a revision session affecting but two sections and but one subject. The main object of the revision was to incorporate all the existing statutes in three volumes, that a person desiring to know the written law upon any subject might learn it by an examination of one of those volumes, without the necessity of referring to many prior statutes upon the subject. Hamilton v. Rathbone, 175 U. S. 421. The very fact of the revision of the statutes presupposes that all the statutes to be collected together therein were in full force and effect at the time the act of revision was passed. It is intended as a substitute for all the public statutes in force before its adoption. 36 Cyc. 1166; State ex rel. v. Mason, 153 Mo. 23; State ex rel. v. Henderson, 160 Mo. 202; State ex rel. v. Aloe, 152 Mo. 475; State ex rel. v. Withrow, 154 Mo. 402; Ex parte Lucas, 160 Mo. 218. The court having construed the sections in the Act of 1899, identical with those relied on by plaintiff in error here, to not relate to or include the class of acts to which that under discussion belongs, that construction became a part of those sections when re-enacted in the same words in 1909. Endlich on Inter. Statutes, sec. 367; Lewis's Sutherland, Statutory Construction, sec. 309 (255); Sedgwick, Construction Stat. & Const. Law, pp. 214, 215; Handlin v. Morgan Co., 57 Mo. 116; Easton v. Courtright, 84 Mo. 34; Mason v. Fearson, 9 How. 258; 36 Cyc. 1153, and cases cited. (3) The Legislature cannot postpone the taking effect of one act by an act passed after the passage of the first. Jackman v. Garland, 64 Me. 135; Matter of Howe, 112 N. Y. 102; Ross v. N. E. Mtg. Sec. Co., 101 Atl. 367; Swann v. Buck, 40 Miss. 304; Olmstead v. Cook, 89 Ala. 232. The term "revised

statute'' has a precise and well-settled meaning in the jurisprudence of the law. In the Matter of Norton, 39 N. Y. (App.) 371; Goodwin v. Prime, 92 Me. 363; Ellis v. Parcell, 100 Mich. 170; Casey v. Harned, 5 Ia. (5 Clarke) 12; Vinsant v. Knox, 27 Ark. 266; Falconer v. Robinson, 46 Ala. 340; Graham v. Muskegon Co. Clerk, 116 Mich. 571. The revision of statutes implies a re-examination of them. The word is applied to a restatement of the law in a corrected or approved form. Steamship Co. v. Joliffe, 2 Wall. 458; U. S. v. Barr, 4 Sawy. 254; U. S. v. Tinan, 11 Wall. 95; Knox v. Baldwin, 80 N. Y. 610; Goodno v. Oshkosh, 31 Wis. 127; Cortesy v. Territory (N. M.), 32 Pac. 505. The testimony as to the promise of marriage was competent. Appellant's counsel had grilled prosecutrix as to her reasons for permitting intercourse. The testimony admitted was merely what appellant's counsel had called for on cross-examination. No complaint as to this can be sustained. In the first place, the evidence was competent, and in the second place, the cross-examination of prosecutrix estops appellant from urging the point. State v. Beatty, 25 Mo. App. 215; Sec. 5115, R. S. 1909. The conversation at the time of the illicit act had been referred to by counsel on cross-examination of prosecutrix and the State was entitled to the whole of it. (4) The first instruction required the jury to find affirmatively every element of the offense before returning a verdict of guilty. It was correct in form and substance. State v. Knock, 142 Mo. 522; Sec. 4472, R. S. 1909; State v. Day, 188 Mo. 367; State v. Hall, 164 Mo. 531. The rest of the instructions are rescripts of a series heretofore approved, with a correction suggested by this court. State v. Knock, 142 Mo. 523; State v. Nueslin, 25 Mo. 124.

FERRISS, J.—Defendant (plaintiff in error), upon an information filed by the prosecuting attorney of Knox county in the circuit court thereof, was con-

victed of carnally knowing one Mary Lindsey, an unmarried female of previously chaste character, between the ages of fourteen and eighteen years, and his punishment fixed at two years in the penitentiary.

Mary Lindsey, the prosecutrix, resided with her parents in the southern part of Knox county, and was about seventeen years of age at the time of the commission of the alleged offense. The defendant owned and resided on a large farm in the same neighborhood. Lawrence Coomb and his wife, the latter being the sister of the prosecutrix, worked for and resided with the defendant, and Miss Lindsey frequently visited with her sister and slept in the same house.

The prosecutrix testified that the defendant began "keeping company" with her in October, 1907, and went with her regularly until February, 1908, when he "commenced misbehaving," and she told him not to come to see her any more; that she afterwards forgave him, at his request, and the relationship was renewed the following April; that about the last of April or first of May, 1908, while she was visiting her sister at defendant's house, and sleeping there, the defendant came to her bed about eleven o'clock at night, awoke her from her sleep, and had sexual intercourse with her; that the act was repeated at his house on the night of September 26, 1908; that on both occasions the defendant told her "that he had a right to with me the same as a man had with his wife—that I was his intended wife, and he had a right to"; that as the result of the occurrence of September 26 aforesaid she gave birth to a child on July 2, 1909. She further testified that defendant, before the first misbehavior in February, 1908, promised to marry her.

C. H. Lindsey, father of the prosecutrix, testified that at the time defendant was arrested he heard defendant say, "That's what a fellow gets for fooling with a girl."

The State's evidence further tended to prove that the prosecutrix bore a good reputation for virtue and chastity in the neighborhood in which she lived, prior and up to the time of the commission of the alleged offense.

On the part of the defense there was considerable testimony tending to prove that a number of young men in the neighborhood sought the society of the prosecutrix and were often in her company, but there was nothing to show that her relations with them had been in any way improper. It was attempted to be shown by the defendant that one of these young men, James Mitchell, fled the country immediately after the defendant's arrest. Mitchell, however, being put upon the stand, testified that a Mr. Bantz, who owned a farm in the neighborhood and another near Newton, Kansas, employed him to work on his Kansas farm from the middle of September to the 12th of November, 1908; that after his return from Kansas he called on the prosecutrix several times, and that soon after defendant's arrest he again went to Kansas to work for Bantz.

Prosecutrix testified that although she considered herself engaged to defendant all through the year 1908, she did not go with him during the summer after the April episode, but often went buggy riding, to church and various social functions with several other men, and this at the request of defendant in order to avert suspicion of their engagement. According to her testimony, they had practically nothing to do with each other after February, 1908, excepting the two occasions of the alleged sexual intercourse. She was, however, keeping what might be termed steady company with the John Mitchell who went to Kansas about the time of defendant's arrest. This particular company was designated, she says, by her betrothed, the defendant.

Defendant, on the witness stand, denied the alleged sexual intercourse, as also the promise of marriage. He also proved his good reputation.

In support of his motion to quash the information, the defendant gave in evidence an indictment against him charging that he seduced and debauched the prosecutrix on September 26, 1908, under promise of marriage, which indictment was filed in court on December 14, 1908. He further proved that this indictment remained undisposed of until the first day of the December, 1909, term of court, when it was dismissed. This action was taken prior to the trial on the information, which was filed September 21, 1909. Defendant also proved that no preliminary hearing was accorded to him prior to the filing of the information. The motion to quash was filed and overruled before defendant was arraigned upon the information. The material part of the motion to quash will appear in the course of the opinion.

Our opinion will be upon the following assignments of error, which are the only ones worthy of consideration: 1, Overruling of the motion to quash the information; 2, admission of illegal testimony; 3, error in giving instruction number one for the State.

I. Two grounds were urged by defendant in support of his motion to quash. They are the third and fourth grounds assigned in the motion, and are as follows:

"Third. Because the offense charged in the said information is the same offense charged in an indictment returned by the grand jury of Knox county, Missouri, against the defendant, December 14, 1908, and which said indictment was pending in this court at the time the said information herein was filed, and said information was improperly and illegally filed by the prosecuting attorney, contrary to and against the Constitution and statutes of this State in such case made and provided.

"Fourth. Because the defendant was not accord-ed the right to a preliminary examination before some justice of the peace in this county prior to the time of filing the said information in this case by the prose-cuting attorney of this county."

The first of these we rule against the defendant, because (a) the indictment charges seduction under promise of marriage under section 1844, Revised Stat-utes 1899, which is an offense different from that charged in the information.    (b)    Section 5055, Re-vised Statutes 1909, upon which defendant relies, pro-vides: "But that mode of procedure which shall be first instituted by the filing of the indictment or infor-mation for any offense shall be pursued to the exclu-sion of the other, so long as the same shall be pending and undetermined." This provision does not apply to the facts in this case. . The words therein, "shall be pursued," mean only at most that the information shall not be tried while the indictment is pending; so that, even if the offense were the same, inasmuch as the indictment was dismissed before the information was tried, the statute was satisfied.

The second ground relied upon by defendant to sustain his motion to quash, namely, that defendant was not accorded a preliminary hearing before the filing of the information, rests upon two propositions.

(a)    The Legislature in 1905 enacted a law (Laws 1905, p. 132) as follows:

"Section 1.    That article 3 of chapter 16, of the Revised Statutes of Missouri of 1899, be and the same is hereby amended by adding thereto a new section, to be known as section 2476a, which shall read as fol-lows:

"Section 2476a.    No prosecuting or circuit attor-ney in this State shall file any information charging any person or persons with any capital offense until such person or persons shall first have been accorded

the right to a preliminary examination before some justice of the peace in the county where the offense is alleged to have been committed, in accordance with article 3 of chapter 16 of Revised Statutes of Missouri of 1899. And if upon such hearing the justice shall determine that the alleged offense is bailable, such person or persons shall thereupon be admitted to bail, conditioned for their appearance on the first day of the next regular term of the circuit court in such county, to answer such charges as may be preferred against them, and not to depart said court without leave.''

In 1907 this law was amended by an act (Laws 1907, p. 243) reading thus:

''Section 1. *Preliminary Examination.*—That section 2476a of article 3, chapter 16 of the Revised Statutes of Missouri, 1899, found in the Laws of Missouri, 1905, be and the same is hereby amended by striking out of said section the words 'capital offense' and inserting in lieu thereof the word 'felony'; so that said section, as so amended, shall read as follows:

''Section 2476a. No prosecuting or circuit attorney in this State shall file any information, charging any person or persons with any felony, until such person or persons shall first have been accorded the right to a preliminary examination before some justice of the peace in the county where the offense is alleged to have been committed, in accordance with article 3 of chapter 16 of Revised Statutes of Missouri of 1899. And if, upon such hearing, the justice shall determine that the alleged offense is bailable, such person or persons shall thereupon be admitted to bail, conditioned for their appearance on the first day of the next regular term of the circuit court in such county, to answer such charges as may be preferred against them, and not to depart said court without leave.''

The Legislature, in 1909, repealed and re-enacted this Law of 1905, without referring to the 1907 amendment, by the following act (Laws 1909, p. 460):

"Section 1. Filing of Informations in Capital Offenses, When—Preliminary Examinations—That an act entitled 'An act to amend article three of chapter sixteen of the Revised Statutes of Missouri of 1899, relating to practice and proceedings in criminal cases, by adding thereto a new section, to be known as section 2476a,' approved April 12, 1905, and as set forth on pages 132 and 133 of the Laws of 1905, be and the same is hereby repealed and a new section relating to the same subject, and to be numbered section 2476a, enacted in lieu thereof as follows:

"Section 2476a. No prosecuting or circuit attorney in this State shall file any information charging any person or persons with any capital offense until such person or persons shall first have been accorded the right to a preliminary examination before some justice of the peace in the county where the offense is alleged to have been committed, in accordance with article 2 of chapter 16 of Revised Statutes of Missouri of 1899. And if upon such hearing the justice shall determine that the alleged offense is bailable, such person or persons shall thereupon be admitted to bail, conditioned for their appearance on the first day of the next regular term of the circuit court in such county, to answer such charges as may be preferred against them and not to depart said court without leave: Provided, a preliminary examination shall in no case be required where same is waived by the person charged with crime."

It will be perceived that the Act of 1909 limits the right to capital cases, as was provided in the Act of 1905.

Defendant claims that the amendment of 1907 was not repealed by the Act of 1909, and that said amendatory Act of 1907, extending the right of preliminary examination to all felony cases, is still in force. We cannot agree to this contention. The Act of 1905, by its terms, created a new section to be incorporated in

the Revised Statutes of 1899, said section to be known as section 2476a, and to be regarded thereafter as if actually written into said Revised Statutes. The Act of 1907 by its terms amended this section, 2476a, which thereafter was to be regarded as if written into the revision as thus amended. The Act of 1909, by repealing the Act of 1905 which created section 2476a, in effect repealed section 2476a, and in lieu thereof enacted a new section, 2476a. This repeal of section 2476a repealed the section as amended by the Act of 1907. This is in accord with the authorities, which hold that where a statute is amended, as was the Act of 1905, and afterwards the original statute is repealed, the repeal operates upon the amendment also. [26 Am. & Eng. Ency. Law, p. 744; Kamerick v. Castleman, 21 Mo. App. 587; Blake v. Bracket, 47 Me. 28.] A further reason for the above conclusion is afforded by the fact that the amendment of 1907 is inconsistent with the Act of 1909, covering the whole subject with reference to preliminary hearings prior to the filing of an information.

(b)   The defendant contends that the Act of 1909, by which the right to a preliminary examination is limited to capital cases, did not become effective until November 1, 1909, and that thereafter when the information was filed (September 21, 1909), the amendment of 1907, extending the right to all felony cases, was still in force, and entitled the defendant to have the information quashed or abated, no such preliminary examination having been accorded to him.

This contention of the defendant that the said Act of 1909, passed at a revision session, did not go into effect until the first day of November following, makes it necessary that we construe the constitutional and statutory provisions with reference to the time when acts passed at a revising session become effective.

The Constitution of 1875, sec. 41, art. 4, provides for the revision of the statutes as follows: ''Within five years after the adoption of this Constitution, all the statute laws of a general nature, both civil and criminal, shall be revised, designated and promulgated in such a manner as the General Assembly shall direct; and a like revision, digest and promulgation shall be made at the expiration of every subsequent period of ten years.''

This provision of the Constitution plainly contemplates a revision of laws which are in existence at the beginning of the revising session, and has no reference whatever to acts which may be passed at such session. Pursuant to this provision of the Constitution, the Legislature, in 1879, passed the first declaratory act concerning the revision of the statutes. When the Legislature took up this subject, it became apparent at once that some provision must be made regarding the laws enacted during the revision session, it being obvious that the statutes as revised and promulgated should contain all the laws of the State of a general character, including those passed at the revision session. Consequently, the Legislature provided in this first declaratory act (Laws 1879, p. 210, sec. 2) as follows:

''The Revised Statutes shall contain all acts revised and amended or enacted during the present session of the General Assembly, of a general nature (except as hereinafter excepted), and all other acts or laws of a general nature which were in force at the commencement of the session, and not expressly repealed, nor repugnant to the provisions of any act passed at the present session, and continued in force by their own provisions.''

This section simply provides what the Revised Statutes shall contain, and has no bearing on the question as to when laws passed at the revision session shall go into effect. The declaratory act proceeds to

indicate the nature of the work to be performed in the matter of revision, and the Legislature is directed to "collate, compile, arrange, classify and codify the Revised Statutes for publication," and they are authorized (section 10) "to supply any omission or correct any error or mistake in numbering or referring to the sections or parts of any act or law." There is also provision for changing words, for making divisions and subdivisions, and for employing such terms and expressions as will facilitate reference to the laws. This section concludes with the following language: "So that they do not, in any case, change, modify or alter the law." The ensuing sections, up to section 16, are merely directory as to the detailed method by which the revision shall be effected. From section 10 to section 16 the subject dealt with is the existing statutes and their revision. Section 16 provides:

"The Revised Statutes, as declared by this act, shall take effect and go into operation from and after the first day of November, in the year of our Lord one thousand eight hundred and seventy-nine, except such acts passed by the present General Assembly and incorporated therein as shall by their provisions take effect at a different time; and until the Revised Statutes shall go into effect as herein provided, the existing statutes shall continue in force."

It is argued that section 16, read together with section 2, above quoted, indicates the intention of the Legislature to provide not only that all laws enacted at the revision session of a general nature shall be incorporated into the Revised Statutes, but also that such acts shall take effect and go into operation on November 1st following.

The Constitution of 1875, section 36, article 4, provides:

"No law passed by the General Assembly, except the general appropriation act, shall take effect or go

into force until ninety days after adjournment of the session at which it was enacted, unless in case of an emergency (which emergency must be expressed in the preamble or in the body of the act), the General Assembly shall, by a vote of two-thirds of all the members elected to each House, otherwise direct.''

Prior to this constitutional provision, the law (section 4, article 4, chapter 86, Wagner's Statutes of 1870) provided that ''All acts of the General Assembly shall take effect at the end of ninety days after the passage thereof, unless a different time is therein appointed.'' This section was amended by an act passed in 1877 (p. 292, Laws 1877) to conform to the language of the Constitution, as follows:

''All laws passed by the General Assembly, except the general appropriation act, shall take effect and go into force ninety days after the adjournment of the session at which they were enacted, unless in case of an emergency (which emergency shall be set forth in the body of the act), the General Assembly shall, by a vote of two-thirds of its members elected to each house, otherwise direct.''

This Act of 1877 was incorporated in the revision of 1879, section 3149. It appears from the preface to the revision of 1879 that all laws of a general nature were either revised or adopted without change. Consequently, the revision of 1879 contained the section last above referred to, providing that all acts passed shall go into effect in ninety days, and the declaratory act, section 3168, providing that all acts shall go into effect November 1, except such acts as by their terms otherwise provide.

This same situation is found in the 1889 revision. The declaratory act passed at each revision session subsequent to 1879 has followed the exact phraseology of the one passed in 1879, excepting the provision regarding laws changing the time of holding courts, which was added in 1889 and retained thereafter. The

ninety-day law has also been retained in each revision without change.

It appears from the foregoing that during the entire period from 1879 to the present, the statutes have contained both the section which provides that all laws, without an emergency clause, shall go into effect in ninety days after the adjournment of the session, and the provision of the declaratory act that the Revised Statutes shall go into effect on November 1, except acts passed by the revising session which provide otherwise by their terms.

It will be perceived from the foregoing review of the Constitution and acts of the Legislature that section 8094 of the Revised Statutes of 1909, being the section which declares when the Revised Statutes shall take effect, in so far as it refers to acts passed by the then present General Assembly, was not passed to carry out any constitutional mandate, because as stated above, the provision in the Constitution for revising the statutes makes no reference to laws which might be enacted during the revising session. The provision in the declaratory act regarding laws passed at the revising session arose from the fact that it became necessary to include all the laws in the Revised Statutes, and consequently some provision had to be made as to incorporating therein acts passed at the revising session.

The question arises in this case whether section 8094 of the Revised Statutes of 1909 shall prevail over section 8061, which provides that all laws passed by the General Assembly shall go into effect ninety days after adjournment. Referring to the revision of 1899, it will be seen that section 4178 (sec. 8061, R. S. 1909) is contained in article 4, chapter 45, and that said article is designated as a revised bill. The revision committee of 1899, in a preface to the Revised Statutes, states that "revised bills passed are desig-

nated by an asterisk.'' Consequently, section 4178, providing that all laws shall take effect in ninety days, is contained in an article which, as indicated by an asterisk, was revised at the same session of the Legislature which passed the declaratory Act of 1899; so that it cannot be said that this act was overlooked or ignored by that session. It was under consideration, and was re-enacted in the revised bill. Furthermore, it appears from an inspection of the Journal of the Senate for 1899 that the revised bill containing the provision that all laws shall take effect ninety days after adjournment was passed subsequently to the passage of the declaratory act of that year. The latter was introduced April 13 (p. 640) and approved May 22, (p. 1190). The former was introduced April 27 (p. 776), and approved May 29 (p. 1213). So that the 1899 Legislature revised and approved the general act providing that all acts, except those with emergency clauses, should go into effect in ninety days, with full knowledge of the terms of the declaratory act theretofore enacted. Whether or not section 8061 of the revision of 1909 was passed in a revised bill does not appear, as there is nothing in the Revised Statutes of 1909, as published, to indicate what bills were revised, or whether any bills were passed as revised bills. But it is apparent, at least as late as 1899, that the Legislature regarded both acts as being in force, and consequently must have considered that they were not antagonistic, and could be reconciled. The only way to reconcile them, however, and give effect to section 8061, is to hold that section 8094 does not contemplate that acts passed by the General Assembly in 1909 should wait until November 1 before going into operation, and that the Legislature, by the use of the words "Revised Statutes" in section 8094, meant that the statutes as a whole should take effect as a revision— that is, as the official repository of all the laws of the State—on November 1, without intending, however, to

prevent the operation of section 8061 upon bills passed at that session.

There is much confusion apparent from the various revisions concerning the methods adopted by the various General Assembles in carrying out the constitutional mandate respecting statutory revision. In 1879, as appears from the provisions of the Revised Statutes, as also in 1889, revised bills were introduced covering all subjects and chapters of existing laws, and such bills were passed except in cases where it was considered that no revision was necessary; but it does not appear from the Revised Statutes of 1899 what method was pursued, except that revised bills were indicated by asterisks. In 1909 the whole matter was turned over to a commission of lawyers. We think it apparent, however, considering the language of the Constitution, and all of the proceedings of the various revising sessions, that the theory adopted was that the revision of the statutes had reference to existing laws, and that no new bill passed at a revising session should be regarded as a revision bill; also, that it was understood and contemplated by the Legislature at these various revising sessions that such new bills, notwithstanding the language of the declaratory act, should go into effect, as provided by law and as contemplated by the Constitution, ninety days after adjournment. Such appears to have been the construction put upon the law by this court in numerous decisions; by the Legislature itself, and by the various departments of the Government; and whatever view might be taken, as an original proposition, of the question as to the force and effect of the declaratory act, we are constrained to hold, in view of the construction put upon the law, as above indicated, for the last thirty years, that the act under consideration went into effect ninety days after the adjournment of the Legislature.

In 1899, the Secretary of State, in the certification of the acts, makes this statement: "The Legis-

lature having adjourned on the twenty-second day of May, the laws without an emergency clause go into effect on Sunday, August 20, 1899." In 1909, the Secretary of State in his certification (Laws 1909, p. 920) makes this statement: "The Legislature having adjourned the 17th day of May, the laws not revision measures, and without emergency clauses, go into effect Monday, August 16, 1909; the revision bills go into effect Monday, November 1, 1909."

Numerous cases have been before this court involving the question as to when the acts passed at a revising session of the Legislature went into effect. In none of them was the question presented here contested. In all of them it was assumed by the counsel on both sides and by the court that such acts did go into effect ninety days after the adjournment of the Legislature, and the statement is made both by the counsel and the court in several instances that such was the case. Such assumption by the court and counsel is, of course, not binding, as the cases involved no express decision on this point. The fact that the question was not raised, however, is worthy of serious consideration, especially in view of the further fact that many of these decisions were made long before the session of 1909.

In 1899 the Legislature passed an act relating to the police force in the city of St. Louis. It was not a revised bill, nor did it contain an emergency clause. The Legislature adjourned on the twenty-second day of May, and consequently, under the ninety-day theory, the act went into effect on the twentieth day of August following. A mandamus proceeding (State ex rel. v. Mason, 153 Mo. 23) was instituted in this court to compel the city auditor to audit pay-rolls and issue warrants for the payment of the police of the city of St. Louis from August 21, 1899, under the Act of 1899. The cause proceeded to judgment that the salary

should be paid from that time. No question was raised as to when the act went into effect, but it was necessarily assumed by the court that the act did go into effect on August 20, 1899.

The case of State ex rel. v. Mason, 155 Mo. 493, was a mandamus proceeding to compel the city auditor of the city of St. Louis to audit a certain bill of expenses incurred by the board of election commissioners, appointed in August, 1899, under the act passed by the Legislature at the session of 1899. A peremptory writ of mandamus was awarded requiring the auditor to audit the salaries and bills for office supplies for August and September, 1899. Again, no question was raised as to the time when the act took effect, but the judgment necessarily assumed that the act was effective in August.

That same session of the Legislature passed an act creating the office of beer inspector, and provided for his duties. Various manufacturers of beer filed a bill on September 27, 1899, asking that the inspector appointed under the Act of 1899, and necessarily before September 27, be enjoined from proceeding under that act. On October 2 the inspector applied to this court for a writ of prohibition. [State ex rel. v. Wood, 155 Mo. 425.] No question was raised in that case that the appointment was premature, and the statement was made by the court and counsel that the act did go into effect at the time indicated.

In the case of State ex rel. v. Henderson, 160 Mo. 190, was involved the question whether the Act of 1899, providing for a collateral inheritance tax, applied to a case where a testatrix died September 5, 1899, the will being probated September 21, 1899. It was decided that the act did apply, and this decision necessarily involved recognition of the fact that the act took effect ninety days after the adjournment of the session.

In none of the above cases did the act provide when it should go into effect, or contain an emergency clause.

In State ex rel. v. Aloe, 152 Mo. l. c. 475, and State ex rel. v. Withrow, 154 Mo. l. c. 402, this court stated that the acts of June 19, 1899, and March 15, 1899, "there being no emergency clause," took effect August 21, 1899. The same situation arose in the case of Ex Parte Lucas, 160 Mo. 218. All of the counsel on both sides and the court assumed, without discussion, that the Barbers' Act of 1899 took effect ninety days after adjournment. The court, in fact, in terms so stated. So in the case of State ex rel. v. Washburn, 167 Mo. 680, there was involved the question whether election commissioners appointed under the Act of 1899 were properly appointed. The appointment was made, and they began their duties on August 21 of that year. No question was made in the case but that, so far as time was concerned, the appointment was properly made.

The Springfield Court of Appeals was created by an act passed during the session of 1909, and the judges for that court were appointed by the Governor prior to October of that year. The court organized, sat and heard a docket in October, and cases were transferred to it from this court, under the provisions of the act, prior to November 1.

We are cited to the case of Haskell v. Sells, 14 Mo. App. 91. In that case the validity of a corporation was challenged. It was organized September 23, 1879, under a law passed in 1879. In that case the court held that the act did not take effect until November 1, but the decision was made distinctly on the ground that the act in question was a revised bill. So in State v. Edwards, 136 Mo. 360, which case involved a revised bill. The case of State v. Orrick, 106 Mo. 111, involved an act changing the time for holding court. Held, that the act took effect in ninety days.

Hausen v. Insurance Company, 66 Mo. App. 29, holds that the revised insurance laws of 1889 did not take effect until November 1.   Reference to the Revised Statutes of 1889 shows that the insurance laws were revised and passed by a revised bill.   [P. 2229, R. S. 1889.]

The case of Whittaker v. Insurance Co., 133 Mo. App. l. c. 667, cited by the defendant, is not in point.

Referring again to the beer inspection act, passed in 1899, the act went into operation by the appointment of an inspector in August of that year.   In 1901 was passed an act (Laws, 1901, p. 181) authorizing the Governor to compromise and settle claims by the State for inspection fees for beer sold for consumption in this State after September 20, 1899.   Here we have a plain legislative recognition of the fact that the Act of 1899 went into effect ninety days after the adjournment of the Legislature.

It has been the uniform practice of our Governors since 1879, where new offices have been created by a revising session of the Legislature, to make appointments to fill such offices on the theory that the law creating the office went into effect ninety days after the adjournment of the Legislature.   Such appointments were made under acts passed in 1889, 1899 and 1909.

We regard as significant the fact that notwithstanding the construction which has been put upon these laws by the decisions of this court referred to; by the acts of the various Governors making appointments, and by the certificates contained in the official publication of the session acts, the Legislature, in 1909, adopted the same phraseology in the declaratory act, and also in the general act concerning the time when laws should go into effect. According to the ordinary rules of construction, it must be held that the Legislature re-enacted these laws with the construction which had been so placed upon them.   Especially is

this true where the Legislature itself has recognized such construction, as pointed out above, in the Act of 1901 compromising the beer tax. Furthermore, we are satisfied from a careful consideration of the constitutional provision, and the course taken by subsequent Legislatures, that it was not the purpose or policy of the law, by the provisions concerning the revision of the statutes, to disturb the general law providing the time when acts shall go into effect. It has not been held, so far as we are advised, that acts which are not revision acts do not go into effect until November 1. On the contrary, it has been uniformly recognized that such acts go into operation ninety days after the adjournment of the Legislature.

We are constrained to hold that the act in question became effective ninety days after the Legislature adjourned.

II. We think it was error to permit the prosecutrix to testify to the alleged promise of marriage made prior to February, 1908. It appears from her testimony that subsequently to this alleged promise she broke off her relations with defendant and forbade him her home. Afterwards, in April, she "forgave" him. Counsel for defendant interrogated the prosecutrix clearly as to what was said by defendant at the time of the alleged offense in April. It was, therefore, competent for the State to bring out the entire conversation at that time, even if it covered a promise of marriage. What was said then was competent upon the further ground that it was part of the *res gestae;* but in no sense was it competent to prove a promise of marriage three months anterior to, and entirely disconnected with, the offense. Especially is this true when the alleged engagement was broken before the offense charged was committed. Such testimony was likely to prejudice the jury. Under a charge of seduction under promise of marriage, the uncorroborated

evidence of prosecutrix as to the promise is not suffi-
cient to sustain the charge. To permit her to testify
to such promise in a prosecution for the offense
charged in this information allows her uncorroborated
testimony on this point to go to the jury, when in fact
the promise of marriage is not an essential ingredi-
ent of the offense. The essence of the offense is the
unlawful sexual intercourse. It cannot be made to
appear that the alleged engagement to marry made
some time before February, and subsequently broken
by the prosecutrix, in any way influenced her to yield
in April.

The situation here is quite different from that
presented in the case of State v. Reed, 237 Mo. 224,
decided at this term. In the latter case we hold the
evidence of a promise to marry to be competent where
"such promise is so immediately connected with the
question of her previous chaste character, and with
*the act of the defendant which the law denounces,* that
it becomes *part of the transaction,* and is essential to
a proper understanding of the facts which constitute
the offense."

III. The first instruction given for the State was
erroneous, in that it directed the jury to convict if
they should find that the offense charged was com-
mitted "at any time within three years next before
the 21st day of September, 1909," the date named in
the information. Under our ruling in the case of
State v. McMahon, 234 Mo. 611, defendant could not
be convicted of the offense which the prosecutrix testi-
fied was committed September 21, for the reason that,
upon her own evidence, she was not then of chaste
character. Evidence of the act committed in Septem-
ber was allowed to go to the jury without any limi-
tation or explanation by the court. Under the instruc-
tion as given the jury would be permitted to convict
if they found that the act was committed in September,

whether or not they found that the defendant committed the act in April preceding, as testified to by the prosecutrix. Testimony was given of two acts, one in April and one in September, and the jury were instructed in effect that they might convict if they found that the defendant committed either act. The court should have restricted the jury to a consideration of the act which prosecutrix testified was committed by defendant in April. The jury, or some of its members, may have believed the evidence of the prosecutrix as to the act alleged to have been committed in September, and disbelieved the testimony as to what occurred in April, and yet be justified in convicting under this instruction. This view of the law is clearly within the rulings of this court in State v. Pruitt, 202 Mo. l. c. 52, and State v. Palmberg, 199 Mo. 233. The State was not confined to the date charged in the information. The evidence for the State tended to prove that the offense charged was committed in April, and the instruction should have restricted the consideration of the jury to the testimony as to that offense. The other instructions were in due form and fair to the defendant. Of them he can make no just complaint.

IV. The defendant urges, finally, that the evidence does not sustain the verdict. We cannot usurp the province of the jury. The story of the prosecutrix, improbable as it is in many respects, if believed, makes a case for the jury.

We cannot allow this verdict to stand; nor may we, on the other hand, properly say that the case shall not be submitted to another jury, under proper rulings on testimony and proper directions as to the law.

For the errors pointed out in this opinion the judgment is reversed and the cause remanded. *Kennish, P. J.,* and *Brown, J.,* concur.