## THE STATE v. CLARENCE PIERCE, Appellant.

### Division Two, June 1, 1912.

1. **PRELIMINARY HEARING.** Parties charged with an ordinary felony are not entitled to a preliminary examination before a committing magistrate.

2. **INSTRUCTIONS: Comment on Evidence.** In criminal cases the instructions should declare the law in the plainest possible language; and needless and incorrect comments upon the evidence should be omitted.

3. ————: **Subtle Definitions.** Instructions containing subtle definitions of what constitutes reasonable doubt, asked by defendant, should be refused, and their refusal is cured by correct ones given on behalf of the State.

4. **ATTEMPTED RAPE: Force.** To constitute the crime of an attempt to rape, it is not necessary that the accused should in fact overcome all resistance of the intended victim. If he actually made the assault with the intent to overcome all resistance the female could offer, the crime is complete. But the force used by him must be actual force, and not mere solicitations or peaceable pursuasion.

5. ————: ————: **This Case.** About eight o'clock at night defendant and prosecutrix left a town, in a buggy, to go to their home about thirteen miles in the country. When they were at a lonely place along the road, he suddenly threw his arms about her and commenced kissing her and trying to raise her dress. She slapped him in the face and urged him to desist, but he became so persistent in his lascivious advances that she threatened to jump out of the buggy and walk home. Finally she did jump out, and defendant, after hitching his team, ran after her, caught her, and after a severe scuffle threw her to the ground, held her hands, raised her dress and touched her with his private parts. She screamed, struck him in the face and pulled his hair and fought him to such an extent that after a few minutes he desisted. *Held*, that these facts, established by the testimony of prosecutrix alone, made out a prima facie case for the State of an attempt to rape; and the fact that she was resolute and stout enough to successfully resist his brutality does not purge him of the crime which he intended to commit when he commenced the assault.

Appeal from Ray Circuit Court.—*Hon. F. H. Trimble,* Judge.

AFFIRMED.

*Farris & Farris* for appellant.

(1) The plea in abatement should have been sustained for the reason that the defendant was not accorded a preliminary examination. Laws 1907, sec. 2476a. This case was appealed before decision in case of State v. Schenk, 238 Mo. 429, and we ask the court to again consider this point. (2) The demurrer to the evidence should have been sustained because the evidence is insufficient to convict the defendant of the crime of assault with intent to commit rape. State v. Priestley, 74 Mo. 24; State v. Owsley, 102 Mo. 678; State v. Scholl, 130 Mo. 396; State v. Hayden, 141 Mo. 311. (3) Instruction 2 is erroneous in that it fails to require the jury to find before they can convict the defendant, that the intention of the defendant, if it became necessary, was to force compliance with his desire at all events and regardless of any resistance the prosecutrix might offer. State v. Neal, 178 Mo. 63. (4) Instruction 4 is erroneous for the same reason set out in point 3. (5) Instruction 6 did not clearly and definitely call to the attention of the jury the effect of the failure of Ruth Oldham to make complaint. State v. Miller, 191 Mo. 587; State v. Boyd, 178 Mo. 2; State v. Goodall, 210 Mo. 215. (6) Instruction D, asked by the defendant and refused by the court should have been given for the reason that in cases of this character, jurors act upon prejudice against the defendant, and by this instruction it was sought to confront them with their prejudice and remove it, thus giving to the defendant a fair and impartial trial. State v. Boyd, 178 Mo. 11. (7) Instructions B, C, E, F, asked by defendant and refused by the court should have been given because they were based on the evidence and properly declared the law of the case as to the failure of prosecutrix to make outcry. And for the further reason that they differentiate between an outcry and merely telling a story in answer to interrogatories, which latter is in fact no outcry and should

be governed by the law laid down in these instructions. State v. Bell, 101 N. W. 189; State v. Welmot, 72 Pac. 838; State v. Halford, 54 Pac. 819; State v. Patrick, 107 Mo. 158; State v. Whitten, 100 Mo. 528.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1)   Assault with intent to rape is a crime at common law.   Glover v. Commonwealth, 86 Va. 382; State v. Pickett, 11 Nev. 255; Rookey v. State, 70 Conn. 104.   If a man assaults a woman, meaning to ravish her, and he desists, he is still guilty of assault with intent to commit rape.   1 Bishop's New Crim. Law, secs. 733 and 766; 33 Cyc. 1436; State v. Smith, 33 Atl. 441; State v. Elick, 7 N. C. 68; Lewis v. State, 35 Ala. 380; State v. Cross, 79 Am. Dec. (Ia.) 519; State v. Hartigan, 78 Am. Dec. (Vt.) 609; Commonwealth v. Slattery, 18 N. E. (Mass.) 399; State v. Long, 93 N. C. 542.   (2)   The sufficiency of the evidence was for the jury.   Prosecutrix' evidence was convincing, and strenuous cross-examination did not shake her testimony; in fact, it tended to corroborate her direct examination.   Appellant undoubtedly had the offense well thought out, as they started to Lawson and, against the will of prosecutrix, he took her to Excelsior Springs.   The sufficiency of the evidence is ample, and the jury should have given him the maximum punishment.   State v. Neal, 178 Mo. 63; State v. Espenschied, 212 Mo. 215.   (3)   Refused instructions A, B and C are fully covered by instruction 6 given.   Refused instruction D is an abstract proposition of law, and the law of the case had been fully covered in the instructions given.   While this instruction was in effect approved in State v. New, 178 Mo. 11, it does not follow that it is error not to give it.   Refused instruction E does not correctly state the principles of law.   State v. Miller, 191 Mo. 587; State v. Diltz, 191 Mo. 655; State v. Bateman, 198 Mo. 212.

An instruction on reasonable doubt had been given, and it is not necessary to define reasonable doubt. State v. Bond, 191 Mo. 555. When instructions given cover the case, it is not error to refuse other instructions covering the same points as those already given. State v. Atchley, 186 Mo. 174; State v. Crittenden, 191 Mo. 17; State v. Barrington, 198 Mo. 23; State v. Speyer, 194 Mo. 459.

BROWN, P. J.—Defendant was convicted of the crime of assault with intent to ravish one Ruth Oldham in Ray county, Missouri. He appeals from a judgment of the circuit court of that county fixing his punishment at two years in the penitentiary.

The defendant, a farmer, twenty-seven years old, resided with his grandmother. Prosecutrix, eighteen years old, lived with her father on a farm near defendant. Both of them bore a good reputation prior to the commission of the crime of which defendant was convicted.

Defendant was a suitor of prosecutrix for a period of twenty months prior to August 1, 1911. He frequently took her in his buggy to church and also to near-by towns. According to the evidence of both parties, their courtship had not ripened into an engagement, and their conduct was not considered in any way unusual, except that they were sometimes out buggy-riding until a late hour at night.

About three p. m. on August 1, 1911, prosecutrix started with defendant ostensibly to drive to the town of Lawson, about eleven miles distant, to do some trading. After arriving at a road which led to Excelsior Springs, defendant decided to go to that point instead of Lawson, in order that he might telephone his mother, who was then at Kansas City. They arrived at Excelsior Springs about 6:30 p. m., after the stores had all closed, so that prosecutrix could not make the purchases she desired. While at the

Springs, defendant left prosecutrix for about three-quarters of an hour, while away on some unexplained errand.

About eight p. m. defendant and prosecutrix started for the .home of prosecutrix some thirteen miles distant. Up to this point, there is no conflict in the testimony. Prosecutrix testified that at a lonely place on the road, defendant suddenly threw his arms around her and commenced kissing her and trying to raise her dress. She slapped him in the face and tried to make him behave himself, but he became so persistent in his lascivious advances that she threatened to jump out of the buggy and walk home. Finally she did jump out, and defendant after hitching his team, ran after and caught her; when after a severe scuffle he succeeded in throwing her to the ground, raising her dress and touching her with his private parts. She claims to have screamed and fought the defendant by striking him in the face and pulling his hair to such an extent that after a few minutes he desisted from his attempt to have intercourse with her against her will, and began looking for his ring and pipe which he claimed to have lost in the scuffle. During the assault, defendant told prosecutrix to scream all she wanted to, that there was not a house within three miles. Prosecutrix got in the buggy and was driven home by defendant. They reached her father's home about the hour of one a. m., and she then informed defendant she never wanted to see his face again. Prosecutrix then went to bed with her sister, and made no complaint of the assault until the following evening, when she told her sister. Other members of the family were not informed of the assault until thirteen days afterward, when this prosecution was instituted.

The report of the attempted assault spread rapidly through the neighborhood; but just how the report was first started, does not fully appear. Some

days after the crime, an old man named Newt Mc-Adams, who cultivated the same farm where defendant resided, asked defendant why he attempted to have intercourse with prosecutrix when she was not willing to submit to such conduct. Defendant did not deny the criminal conduct attributed to him, but gave a vulgar answer, indicating that his acts were inspired by uncontrollable lust. In a conversation with Lawson Cox, another neighbor, regarding some witnesses summoned before the grand jury, defendant said, ''If that girl tells what she knows, I will be in a pretty tight box.''

The morning after the alleged crime, the defendant seemed to be in a worried and peevish mood. He was asked by one Mabel Brown, who was living with his grandmother, why he swore at such trifles as breaking a shoestring; to which he replied that that was not what really worried him; that he was full as a goose last night and lost his ring and pipe. Witness asked defendant what he was doing the night before. To which he replied that he ''done enough to put him in the penitentiary all right. If that d—d fool keeps her mouth shut, I will be all right.''

Witness did not explain who defendant referred to by this last remark; but as he had been with no other woman except prosecutrix the night before, he undoubtedly referred to her. Defendant testifying in his own behalf, denied that he made any criminal assault on prosecutrix, and also denied making the incriminatory statements testified to by witnesses Newt McAdams, Mabel Brown and Lawson Cox.

Defendant stated that on the return trip from Excelsior Springs, he had a quarrel with prosecutrix about another young man she had been keeping company with, and in effect informed her that he was going away and would not keep company with her any more.

For reversal, defendant relies:

(1)    Upon the failure to accord him a preliminary examination;

(2)    Erroneous instructions given by the court;

(3)    Error of the court in refusing to give instructions prayed by defendant; and,

(4)    Insufficiency of the evidence to support the verdict.

I. In the case of State v. Schenk, 238 Mo. 429, after an exhaustive review of the statutes of this State and the authorities, we held that parties charged with an ordinary felony, were not entitled to a preliminary examination before a committing magistrate. We still adhere to that decision.

II. The instructions given by the court were fair to defendant, and correctly defined all the issues of law necessary for the guidance of the jury in reaching their verdict.

III. All proper issues presented in defendant's refused instructions were covered by the instructions given.

Below, we reproduce two of defendant's refused instructions:

"The court instructs the jury that the charge with intent to commit rape, made by Ruth Oldham, against the defendant, remains uncorroborated by any evidence in the cause; if the jury shall believe from the evidence in the cause that said Ruth Oldham concealed the alleged assault to commit rape until several days after the commission of such alleged assault upon her, then the law presumes such concealment inconsistent with defendant's guilt.

"The court instructs the jury that the law clothes the defendant with the presumption of innocence which attends and protects him until it is overcome by testi-

mony which proves his guilt beyond a reasonable doubt, which means the evidence of his guilt as charged must be clear, positive and abiding, fully satisfying the minds and conscience of the jury, and it is not sufficient in a criminal case to justify a verdict of guilty that there may be strong suspicion or very strong probabilites of guilt, nor is it sufficient that the greater weight or preponderance of the evidence supports the allegation of the information; nor is it sufficient that upon the doctrine of chance it is more probable that the defendant is guilty than that he is innocent, but in order for a conviction, the law requires the proof by legal and credible evidence of such a nature that where it is all considered it produces a clear, undoubting and entirely satisfactory conviction of defendant's guilt, and the burden of establishing the guilt of defendant, as above required, is on the State, and if the jury can as readily say from the evidence that the defendant is innocent as well as they could say he was guilty, then, in such case, it would not be sufficient evidence on which to convict defendant, then it would be the jury's duty to give him the benefit of the doubt and acquit him.''

In criminal cases, courts should declare the law to the jury in the plainest language possible; and incorrect or needless comments upon the evidence, such as are found in the first instruction above set out; and subtle definitions of what constitutes reasonable doubt, as found in the last instruction above copied, should always be omitted. [State v. Stanley, 123 Mo. App. 294; State v. Hale, 238 Mo. l. c. 511; section 5244, R. S. 1909; State v. Shaeffer, 89 Mo. 271.]

We will not encumber this opinion with a further comment upon the instructions given and refused.

IV. The defendant's main contention is that if the evidence of the prosecutrix be taken as true, it does not prove such an assault as constitutes the crime

of assault with intent to ravish. He cites the follow--
ing cases: State v. Priestley, 74 Mo. 24; State v.
Owsley, 102 Mo. 678; State v. Scholl, 130 Mo. 396;
State v. Hayden, 141 Mo. 311. The cases of State v.
Priestley and State v. Owsley, supra, do not present
anything like such a persistent and aggravated assault
as the case at bar; and therefore they are not in point.
The case of State v. Scholl, 130 Mo. 396, was a prose-
cution for an assault in some respects much like the
one with which defendant is charged. However, in
the Scholl case there was no outcry by the prosecutrix,
when such outcry would have brought help and relief
to her; while in the case at bar there was an outcry
at a place where no one was near enough to give aid
to the party assaulted. The evidence in the case of
State v. Hayden, 141 Mo. 311, shows an attempted
housebreaking or burglary, but no evidence of an at-
tempt to rape.

In the case at bar, the court told the jury that
before they could convict the defendant of assault with
intent to rape, they must find and believe beyond a
reasonable doubt from all the evidence in the case that
the defendant at the time intended to have sexual
relations with the said Ruth Oldham against her will
and regardless of any resistance she might offer and
at all hazards.

To constitute the crime of attempt to rape, it is
not necessary that the accused should in fact overcome
all resistance of the intended victim. In some cases
the female may be able to successfully resist the most
brutal attempt to despoil her of her virtue, or she may
be able to inflict such punishment upon her assailant
as to force him to abandon his felonious purpose. If
the defendant actually made the assault with the in-
tent to overcome all resistance the prosecutrix could
offer, the crime was complete. [1 Bishop's New Crim-
inal Law, secs. 732 and 733.] But of course, in cases

of this character, the force used must be actual force, and not mere solicitation or peaceable persuasion.

In the case at bar, if the prosecutrix swore the truth, the defendant took her to a place where he thought no one could see him nor hear any outcry of his intended victim, and in spite of her most vigorous objections to his embraces, threw her upon the ground and by holding her hands, attempted to force her to submit to sexual intercourse with him.   This made out a prima facie case for the State.   The fact that the prosecutrix was resolute and stout enough to successfully resist his brutality does not purge defendant of the crime which he intended to commit when he began the assault.

The jury were the judges of the evidence, and from a careful reading of the record, we see no indication that they failed to weigh the evidence correctly and return a proper verdict.   The judgment is affirmed.

*Ferriss* and *Kennish, JJ.,* concur.