# SUPREME JUDICIAL COURT,

FOR THE

## WESTERN DISTRICT.

## 1862–3.

## COUNTY OF CUMBERLAND.

### NATHANIEL J. MILLER *versus* LEVI MORRILL & als.

The president and five directors of a railroad company agreed by a memorandum in writing, each to advance certain specified sums, to enable the company to pay coupons becoming due on its bonds, and that the president should advance the further sum of $2,000 "with the *assurance* from the other five, that, at the next meeting of the directors, they will cause provision to be made" to indemnify him for the proportional "excess advanced by him." At the next meeting, the president was authorized· to sell or pledge mortgage bonds of the company to raise money "to meet present claims,"· and also to mortgage movable property of the company to secure its creditors. The bonds were sold, and the proceeds applied to pay other and subsequent debts of the company. In an action by the president, brought against the directors on the written memorandum, to recover for the excess advanced by him, it was *held*, that the votes of the directors authorizing the sale of the bonds and mortgage of movables put it in the power of the president to pay or secure himself, and were a sufficient fulfilment of the agreement of the directors, and the action could not be maintained.

ON REPORT of the evidence before KENT, J., at *Nisi Prius*, on exceptions, and on motion to set aside a verdict for the defendants.

VOL. LI.      2

The action was ASSUMPSIT on a memorandum in writing, which is given in the opinion of the Court.

In defence, the defendants proved certain votes of the directors which will be found in the same opinion.

It further appeared that a settlement was subsequently made of the plaintiff's account with the company, in which the company was credited with $2884, the nett proceeds of the bonds sold under the vote of the directors, and charged with note of May 20, 1854, with interest, paid Miller, $307,84; note of March 28, 1854, with interest, paid S. Towle, $340,50; note of Oct. 31, 1853, with interest, paid Miller, $1071,17; account of Miller, (which was for his salary as president from Oct. 17, 1853, to Nov. 14, 1854,) $1291; paid Mr. Clifford, $45; leaving $173,51 due Miller, for which a note on demand was given him, and was paid in April following.

The plaintiff, in his testimony, alleged certain claims which he held against the same company for land damages, amounting to $2044,15, and stated that the notes to himself and Towle, which he paid from the proceeds of the bonds, were for money which he had advanced out of his own funds.

The plaintiff's counsel requested the Court to instruct the jury, that the votes of the directors above referred to, were not a fulfilment of the contract; and that, if a part of the proceeds of the bonds, placed by the directors at the disposal of the president, had been diverted from the appropriation made by the vote, with the consent of the company and of the plaintiff, and without injury to the defendants, the plaintiff's right to recover would not be affected thereby.

These instructions were not given, but the presiding Judge instructed the jury, that, if the plaintiff was present when the vote was passed for the sale of the bonds, and did not request any other or further action in his behalf, and, if he realized enough from the sale to pay his $2000 note, he had the right to pay it therefrom; that he had the power, under the second vote, to cause a mortgage of the movables of

the company to be made to himself; and that, if he did not pay his note of $2000, but appropriated the proceeds of the bonds to pay his note of $1000 and other demands not due, and not within the terms of the vote, and did not take a mortgage, nor, after the vote was passed, notify the defendants or ask for any further action or provision for his security, then he could not maintain this action.

The plaintiff's counsel excepted to the instructions and refusals to instruct, and filed a motion to set aside the verdict as against law and evidence.

*Shepley & Dana* and *C. P. Miller*, for the plaintiff.

*E. Fox*, for the defendants.

The opinion of the Court was drawn up by

APPLETON, C. J.—This suit is on a memorandum signed by the parties, in these words :—

"Oct. 31, 1853.

"The sum of $6000 being required to meet the payment of coupons of the York & Cumberland Railroad Company, falling due on the 1st November, 1853, Mr. Miller, the president, proposes to advance to the company $1000 on the company's note on demand. Messrs. Woodbury, Morrill, Pierce, Warren, and Barnes propose to advance respectively, the sum of six hundred dollars each on the company's note, payable to them on demand.

"Mr. Miller further proposes to advance two thousand dollars to the company for which he will take the company's note on demand, with the *assurance* from the other five, that at the next meeting of the directors they will cause provision to be made for his indemnity for *the excess advanced by him,* *so that* he shall be reimbursed or adequately secured for the *excess advanced* by him over and above one-sixth part of the $6000 *now required.*

"P. Barnes,                "Levi Morrill,
"N. J. Miller,             "Geo. Warren,
"N. L. Woodbury,       "Josiah Pierce."

By this memorandum, it appears that the York & Cumberland Railroad were in immediate need of funds to the amount of $6000, to pay the coupons of the company which matured the 1st Nov., and that the plaintiff and the defendants agreed to advance the sum of $4000 in certain specified proportions on the notes of the company. But this was not sufficient for the emergency. The plaintiff advanced $2000 more on the assurance of the directors that, at the next meeting of the board, he should be reimbursed or secured "for the excess advanced by him over and above one-sixth part of the $6000 now required." It is abundantly manifest that the intention of all parties was, that the plaintiff should have a priority for the $2000 by him advanced over the other advances made by the other directors and himself. This sum, by mutual agreement, was to be first paid or secured.

The next meeting of the directors was held on the 11th of November following, and for want of a quorum was adjourned from time to time to Dec. 2, when, the plaintiff being present, it was voted, (1st,) "that the president be authorized to dispose of, by sale or pledge, four of the company's mortgage bonds now in the possession of the treasurer, or any of them, upon the best terms that may be obtained in the market for the purpose of receiving such amount of cash thereon as may be indispensably required to *meet present claims* against the company."

It appears that, on July 6, 1851, the treasurer of the company delivered the plaintiff four of the company's mortgage bonds, each for the sum of one thousand dollars, and, as it would seem, of the value of seventy cents on the dollar, to be returned or accounted for by him on demands against the company.

The plaintiff, by the vote above recited and the reception of the mortgage bonds, had in his own hands the means of reimbursing himself "for the excess advanced by him." The proceeds of the bonds were to be applied "to meet *present claims* against the company." The payment of the

coupons, as they fell due, was "indispensably required" for the credit of the company. Indeed their payment was deemed to be so "indispensably required" that the directors from their own means supplied the funds for that purpose. The notes given represent the coupons and were on demand. They were within the very terms of the vote, for they were "present claims" against the company. Of the notes, the one given the plaintiff for $2000, being the excess by him advanced, was first to be paid or secured, and the vote of the company and the deposit of the mortgage bonds with him enabled him at his own option to reimburse himself.

The plaintiff was fully authorized to dispose of the bonds in the market "for the purpose of raising such amount of cash thereon as may be indispensably required to meet *present* claims against the company." But, upon reference to the account as adjusted, it will be perceived that the proceeds of the bonds were *not* applied to meet "present claims." The only claim, which could be deemed as embraced within that category, was the note given the plaintiff on the day the memorandum was signed for his sixth of the sum then advanced. But, as between these parties, it has been seen that the payment of that sum was to be postponed to that of the $2000 advanced by the plaintiff on the faith of the memorandum in suit, dated Oct. 31, 1853. There was no peculiarly indispensable necessity of paying the plaintiff's salary, nor had it then been earned. The other demands bear date long after the vote of the directors.

The plaintiff, then, had the means of reimbursement, and, if he neglected to make the proper appropriation of the funds under his control, it is not the fault of the defendants nor should they suffer therefor.

At the adjourned meeting of the directors, on Dec. 2, 1853, it was voted, (2,) "that the treasurer, under the *direction* of the president, be authorized in behalf of the company to execute one or more mortgages of the movable property of the company to such persons holding claims against the company, that may be willing to accept the same and are not otherwise adequately secured."

This vote enabled the plaintiff to secure himself by mortgage on the movable property. He was present at the meeting and took no exception to the form of the vote. He was president of the corporation. The direction was left with him as to the making of the mortgages. The option was with him whether he would take a mortgage or not. The provision to be made, was by the defendants, as directors, and from the funds of the company. The security to be given was upon the property of the company. It is not the fault of the defendants that the security proffered may have been inadequate, if such was the fact.

The defendants would seem to have fully complied with all the *assurances* by them given.

Upon carefully examining the instructions given, we think the plaintiff has no just grounds of exception.

*Exceptions and motion overruled.*

RICE, CUTTING, DAVIS, KENT and WALTON, JJ., concurred.