THE STATE ex rel. ATLANTIC HORSE INSURANCE COMPANY v. FRANK BLAKE, Superintendent of Insurance.

In Banc, March 1, 1912.

1. **STATUTE: Amendment: Substitution: Intermediate Act: Insurance Company Capital.** When a section of a statute is amended or displaced by a later substituted act, and still later an act is enacted which in terms purports to amend the original repealed section, referring to it by section number, such intermediate amendment or substitute is to be regarded as if it had always been a part of, or in place of, the original section, and such last amendment of or substitute for the original act is valid. When Sec. 7957, R. S. 1899, was amended and displaced by the Act of 1901, which reduced the capital stock certain insurance companies must have to $100,000, and in 1909 an act was passed which in terms purports to amend Sec. 7957, R. S. 1899, by requiring such companies to have $200,000 capital, and which does not refer to the Act of 1901, the Act of 1909 applies to the intermediate substitute of 1901, which is to be regarded as if it had always been a part of said section 7957. The Act of 1901 was amended by the Act of 1909, and this act by the Act of 1911, and the insurance companies embraced within its provisions are required to have a capital of $200,000.

2. **CONSTITUTIONALITY OF STATUTE: Raised by Foreign Corporation.** A foreign corporation which has never been licensed to do business in this State has no right to challenge the constitutionality of a statute which denies to it the right to be admitted to this State. A corporation organized in one State cannot as a matter of right immigrate into another, and no other State is bound to receive it within its borders, and it can enter only upon such terms as the State may see fit to impose; and until it is admitted a statute which imposes

onerous conditions or even impossible conditions upon its original admission violates no right of such foreign corporation, and it is only persons whose rights are invaded that can question the constitutionality of a statute.

3. ————: ————: Invoking U. S. Constitution: Equality of Citizenship. A foreign corporation, which has never been admitted to this State, cannot invoke that part of the U. S. Constitution which says that "the citizens' of each State shall be entitled to all the privileges and immunities of citizens of the several States," nor that clause in the Fourteenth Amendment which forbids a State to "deny to any person within its jurisdiction the equal protection of its laws." A corporation is not a citizen within the meaning of this constitutional provision, nor is an unadmitted foreign corporation a person within the jurisdiction of the State.

*Held,* by WOODSON, J., dissenting, that since relator has complied with all the laws of this State except the statutes it claims are unconstitutional and which deny to it a license, it has the same legal right that a domestic corporation has to question the constitutionality of that part of them that denies to it a right to a license.

## Mandamus.

PEREMPTORY WRIT DENIED.

*Charles H. Brock* for relator.

(1) When it is the evident intention of the legisla-tive body to amend the existing law in a single matter only, and the amendment is incorporated by mistake in a repealed statute, the court will hold that the amendment adheres to the existing law and is valid as to the said law. Commonwealth v. Kenneson, 143 Mass. 418; People v. Canvassers, 143 N. Y. 84; State v. Corbett, 61 Ark. 226; Svennes v. West Salem, 114 Wis. 650; Reeves v. Gay, 92 Ga. 309; Custin v. Viroqua, 67 Wis. 314; 1 Lewis's Sutherland on Statutory Construction, pars. 233, 234. (2) When the respondent sets up as a ground for refusing the license an act of the Legislature, the relator may attack the constitutionality of such act; and the court may, in mandamus proceed-

ings, pass upon its constitutionality. State ex rel. v. Turner, 210 Mo. 77; State ex rel. v. Vandiver, 222 Mo. 206. (3) A foreign corporation, seeking admission to a State under its valid laws, may attack the validity or constitutionality of a particular provision of the statute which is the sole reason for its exclusion from the State. State ex rel. v. Cooper, 18 N. D. 583; State ex rel. v. Vandiver, 222 Mo. 236, 249; Text-Book Co. v. Gillespie, 229 Mo. 397.

*Elliott W. Major,* Attorney-General, and *John M. Dawson* and *Campbell Cummings,* Assistant Attorneys-General, for respondent.

(1) A litigant asking relief by mandamus must show itself possessed of a clear and legal right to the remedy. State ex rel. v. Hudson, 226 Mo. 265. As a general rule, courts will not declare an act unconstitutional in an application for a writ of mandamus. State ex rel. v. McIntosh, 205 Mo. 635; 26 Cyc. 156. Relator will not be heard to complain that the statute is unconstitutional on the ground that its license to do business in this State will be a benefit to citizens therein. Ordelheide v. Modern Brotherhood, 226 Mo. 210; McCully v. Railroad, 212 Mo. 54. Relator, being a foreign, unlicensed corporation, is precluded from assailing the constitutionality of the Acts of 1909 and 1911. The law is well settled that foreign corporations licensed to do business in a State are precluded from challenging the constitutionality of laws in force in such State at the time the corporation was admitted to do business therein, and this principle should apply with greater force to the case of a foreign corporation seeking a license to entitle it to enter and do business in another State. State ex rel. v. Vandiver, 222 Mo. 206; Daggs v. Ins. Co., 136 Mo. 398; Ins. Co. v. Daggs, 172 U. S. 566; Railroad v. Kentucky, 183 U. S. 503; Ins. Co. v. Herriott, 91 Fed. 711; 19 Cyc. 1317; State v.

Green Lake Co., 98 Wis. 143; Tel. Co. v. Tel. Co., 7 Houst. (Del.) 269. (2) The Act of April 17, 1911, with emergency clause, amending section 7008, Revised Statutes 1909 (not mentioned and not attacked in relator's brief), was in force and effect prior to the petition filed herein, and required a capital of $200,000.

FERRISS, J.—This is an original proceeding in which the relator, a foreign insurance company, seeks by mandamus to compel the respondent to issue to it a permit to do business in this State. The cause is submitted upon a demurrer to the petition.

The relator is engaged in the business of live stock insurance, under charter from the State of Rhode Island, in which State it has its chief business office. On March 1, 1911, relator, having complied with all the laws of this State in that regard, save the statutory requirement of $200,000 capital, demanded from the respondent a permit to do business in the State. This permit was refused upon the sole ground that relator, having a capital of $110,000 only, failed to meet the requirement of section 7008, Revised Statutes 1909 (Laws 1909, p. 602), as amended by the Act of 1911 (Laws 1911, p. 271), then in force, and which requires such a company as this to have a capital of $200,000 as a condition prerequisite to admission into this State.

Relator in its petition asserts that it is entitled to a permit notwithstanding this statute, because the Act of 1901, which requires a capital of $100,000 only, has never been repealed or amended, and is still in force, and because the Act of 1909, if its effect is to amend said Act of 1901, is violative of both the State and Federal Constitutions, and therefore void. The respondent challenges the legal sufficiency of the petition.

The case presents three questions:

1.  Do the statutes, properly construed, require this corporation to have a capital of $200,000 as a condition of its admission?

2.  Is the relator entitled to challenge the validity of the Act of 1909, now section 7008, Revised Statutes 1909?

3.  Is the Act of 1909 a valid law?

Whether this last question shall be considered depends upon our answer to the second question.

I.  Prior to 1901 the statute required such a foreign corporation as this to have a capital of $200,000. [R. S. 1899, sec. 7957.] In 1901 the Legislature, by the terms of an act entitled, "An Act to repeal section 7957 of article 4 of chapter 119 of the Revised Statutes of Missouri 1899, and to enact a new section in lieu thereof to be known as section 7957, and to take the place of said section in said Article 4 of said chapter 119, and relating to insurance," reduced the capital requirement to $100,000, but otherwise re-enacted substantially section 7957.

So stood the law until 1909, when the Legislature amended section 7957, Revised Statutes 1899, by a bill with this title: "An Act to amend sections 7877 and 7957 of chapter 119 of the Revised Statutes of Missouri for the year 1899, relating to insurance, by inserting in each of said sections a clause permitting the investment of funds in bonds issued by school districts of the State of Missouri." In the body of the act appears a provision requiring a capital of $200,000, being similar in this regard to the original section in Revised Statutes 1899 as it stood prior to the Act of 1901, which reduced the required capital to $100,000. The Act of 1909 also provides for the investment in school bonds, as indicated in the title.

Relator claims that the original section 7957, Revised Statutes 1899, had been repealed by the Act of

1901, and that consequently the Act of 1909, which purported to amend section 7957, Revised Statutes 1899, and which did not refer to the Act of 1901, was inoperative, and left the Act of 1901 in full force; also that by the same reasoning the amendatory Act of 1911 is likewise inoperative to affect the Act of 1901.

In our opinion the contention of relator in this regard is unsound. The Act of 1901, by its terms, took the place of section 7957, Revised Statutes 1899, and became, after it took effect, to all intents and purposes, section 7957, Revised Statutes 1899, and subsequent reference to said section applied to the said 1901 act. Consequently, when the Act of 1909 amended said section, such amendment referred to the Act of 1901, which had been substituted for said section 7957.

The rule of law is that when a section of a statute is amended or displaced by a later substituted act, and still later an act is passed which in terms purports to amend the original section, referring to it by number, such last amendment applies to any intermediate amendment of, or substitution for, the original section, such intermediate amendment or substitute to be regarded as if it had always been a part of, or in place of, the original section. [State v. Schenk, 238 Mo. 429; Kamerick v. Castleman, 21 Mo. App. 587; Blake v. Brackett, 47 Me. 28; Greer v. State, 22 Tex. 588; Rowan v. Ide, 107 Fed. 161; Endlich on Int. of Stat., sec. 294; McKibben v. Lester, 9 Ohio St. 627.]

In the last-named case the court said: "When one or more sections of a statute are amended by a new act, and the amendatory act contains the entire section or sections amended, and repeals the section or sections so amended, the section or sections as amended must be construed as though introduced into the place of the repealed section or sections in the original act."

II. The right of a foreign corporation, seeking admission into this State, to challenge the constitutionality of a Missouri statute which refuses such admission, is a question of first impression in this court. We have in the case of State ex rel. v. Vandiver, 222 Mo. 206, permitted a foreign insurance company, doing business in this State under a permit, to question the validity of a condition subsequently imposed by the Legislature upon the granting of the annual renewal certificate. The reasons for that ruling are not discussed in the opinion of the court, but are set out in the dissenting opinion by GRAVES, J., concurring on this point, however, with the majority opinion.

The consideration of some general principles everywhere recognized will indicate clearly that a foreign corporation which has never been admitted into the State, as is the case here, but is standing, a stranger at the door, asking to be let in, occupies a position quite different from that of a corporation which has been admitted and has for many years done business within the State, and acquired property interests, thereby earning recognition as a "person" within the jurisdiction of the State.

A corporation exists by right only within the State that gave it the right to exist. It is purely a creature and creation of law, and the law of its being has no extraterritorial force or effect. Consequently, it cannot as a matter of right immigrate into another State, and no other State is bound to receive it within its borders. The permit which authorizes a foreign corporation to come into this State rests not on any right belonging to the corporation, but alone on comity, and the permission may be withheld for a good or a bad reason, or for no reason at all, and it may be granted upon such conditions as the State may see fit to impose. [Daggs v. Ins. Co., 136 Mo. 393; State ex rel. v. Vandiver, supra; Paul v. Virginia, 8 Wall. 168; Security Mutual Life Ins. Co. v. Prewitt, 202 U. S. 246.]

It follows from the foregoing that a statute of this State, imposing an onerous or even impossible condition upon the original admission of a foreign corporation, violates no *right* of such corporation.

Laws enacted by the Legislature are presumed to be valid, and even if defective because violative of some provision of the State Constitution, are not void, although they may in a proper case be voidable; that is, upon complaint by a party whose *rights* are impaired by such statute. Upon this point Cooley says:

"The statute is assumed to be valid, until some one complains whose rights it invades. 'Prima facie, and upon the face of the act itself, nothing will generally appear to show that the act is not valid; and it is only when some person attempts to resist its operation, and calls in the aid of the judicial power to pronounce it void, as to him, his property or his rights, that the objection of unconstitutionality can be presented and sustained. Respect for the Legislature, therefore, concurs with well-established principles of law in the conclusion that such an act is not void, but voidable only; and it follows, as a necessary legal inference from this position, that this ground of avoidance can be taken advantage of by those only who have a right to question the validity of the act, and not by strangers. To this extent only is it necessary to go in order to secure and protect the rights of all persons against the unwarranted exercise of the legislative power, and to this extent only, therefore, are courts of justice called on to interpose.'" [Cooley's Const. Lim. (5 Ed.), p. 197.]

The foregoing text is substantially the language of SHAW, C. J., in Wellington, Petitioner, 16 Pick. 87, which thoroughly discusses this question. The general doctrine that only one whose rights are invaded can assail the validity of a statute is amply sustained by authority.

In Williamson v. Carlton, 51 Me. l. c. 453, the court, while asserting the power of the court to declare an act a nullity, says: "But at whose instance shall this be done? Plainly those whose rights were injuriously affected by the act complained of, their representatives or assigns, and *they only* can call upon the court to do this. A stranger to those rights, merely interposing a cavil at the tenure by which a neighbor holds his property, cannot be permitted to do it."

In Plumb v. Christie, 103 Ga. 686, the court says: "Before a law can be attacked by any citizen on the ground of its unconstitutionality, he must show that its enforcement is an infringement upon his rights.of person or property."

To the same effect are Smith v. Inge, 80 Ala. 283; Dejarnette v. Haynes, 23 Miss. 600.

A close analogy may be found in the decisions of this court. In State v. Siebold, 192 Mo. 720, Siebold objected to the validity of a dramshop law which gave to the excise commissioner power to revoke his license. We held that "a license to sell intoxicating liquors is not property, but a mere privilege subject to revocation or to such conditions as the State may see fit to impose," and that therefore Siebold was "in no position to raise objection" because "his personal or property rights are not affected by the act of the excise commissioner." We cite in the Siebold case, with approval, the statement of the law by Cooley, quoted above, and other authorities to the same effect.

Relator asserts that the Act of 1909, which bars its admission because of insufficient capital, violates the State Constitution in that the amendatory provision requiring a capital of $200,000 is not within the title of the act. We hold, however, that as relator has no right to admission into the State which the statute violates, it is not in position to challenge the validity of the statute. Nor can relator invoke the aid of section 2, article 4, of the Constitution of the

United States, which provides that "the citizens of each State shall be entitled to all the privileges and immunities of citizens of the several States;" nor the aid of the Fourteenth Amendment, which forbids a State to "deny to any person within its jurisdiction the equal protection of its laws." A corporation is not a citizen within the meaning of the above constitutional provision; nor is relator, although a "person," within the jurisdiction of the State. [Paul v. Virginia, supra; Blake v. McClung, 172 U. S. 239.]

Herein lies the distinction between the case at bar and the Vandiver case, supra: In the Vandiver case a renewal certificate was refused a foreign insurance company which had been doing business in the State for many years, its license having been renewed at the end of each year, as provided by statute. In 1907 the Legislature enacted a statute which, if valid, imposed upon the relator a new and burdensome condition upon the issuing of a further renewal certificate, whereupon, the relator failing to comply with the Act of 1907, the Superintendent of Insurance refused the renewal license. In the mandamus proceedings instituted by the insurance company to compel the issuance of the renewal certificate the Attorney-General earnestly contended that the relator had no standing to contest the validity of the statute. This contention was made upon the ground that the relator, when asking for a renewal license, was in legal effect in the same position as if it were seeking original admission into the State, and that a foreign corporation had no right, merely because it was trying to gain admission into the State, to question the constitutionality of a statute of the State. This last proposition was practically conceded by the relator in that case. Its contention in that behalf was that it was already domiciled in this State, and hence was a person within its jurisdiction. This contention of the company was in effect sustained by this court, which, without discussing the point in

the majority opinion, heard the case and passed upon the constitutionality of the act in question. In his dissenting opinion, GRAVES, J., in the course of his discussion of the point, said:

"This petition for mandamus relates back to the time when relator was entitled to have its report passed upon and approved or rejected, at which time relator was legally domiciled in this State, although a foreign corporation. By this statement we mean that it was so domiciled in the State as to give it the right to challenge unconstitutional laws. It acquired that right by virtue of the original certificate, and the renewed certificate is but to the effect that it was still in good standing under the original certificate, which original gave to it admission to the State. Under the facts in this record, we are of opinion that relator is in position to question the constitutionality of the law now under consideration. And in this we heartily concur in what we take to be an acquiescence in this position by the majority opinion."

He says, further, on page 249:

"It may be true (a question we do not decide, because unnecessary in this case) that a foreign corporation, not domiciled in the State but simply applying for admission, cannot even question a law upon the statutes at the time of its proposed entry in the State, yet that does not affect this case, because the Act of 1907 was passed whilst relator was actually in the State, doing business."

The Vandiver case was briefed, argued and decided upon the proposition that the right to mandamus rested upon the fact that the foreign corporation was at the time it applied for the renewal certificate domiciled within the State, and it was strongly intimated, although not expressly decided, that a foreign corporation, seeking original admission into the State, would have no standing to maintain mandamus proceedings

to challenge the constitutionality of a statute of the State.

Holding, as we must, that the relator cannot attack the validity of the statute which, as we have construed it, denies relator admission into the State, it follows that respondent was right in refusing the license, and the peremptory writ must be denied. It is so ordered. All concur, except *Woodson, J.,* who dissents in opinion filed; *Kennish, J.,* concurs in the result only.

## DISSENTING OPINION.

WOODSON, J.—I dissent from the opinion in this case, for the reason that the record shows that the relator has complied with all the laws of this State, except the statutes which it claims are unconstitutional. If unconstitutional, then they are the same as if they had never been enacted, and if never enacted then clearly under the facts disclosed by this record, the writ would have to go.

That being true, I think that under section 1 of article 14 of the Constitution of the United States, the relator has the same legal right to test the constitutionality of those statutes, in the courts of this State, that a domestic corporation has.

There is a broad distinction between the right of a foreign corporation to sue in the courts of this State, and the right to do business herein.

In the case at bar, the relator is not claiming the right to do business here, but is simply asking the courts of this State to declare whether or not it has so complied with the laws of this State as to entitle it to a license to do business herein; and if so to command the Superintendent of Insurance to issue such a license.

I think both this court and the Supreme Court of the United States have clearly held that relator is en-

titled to be heard in the courts of this State. [State ex rel. v. Turner, 210 Mo. 77; McCully v. Board of Railroad Commissioners, 212 Mo. l. c. 54 to 59; United Shoe Machinery Co. v. Ramlose, 231 Mo. 508; International Text-Book Co. v. Gillespie, 229 Mo. 397; Chambers v. Baltimore & Ohio Ry. Co., 207 U. S. 142, 148; State ex rel. v. Grimm, 239 Mo. 135.]

In my opinion the alternative writ should be made permanent.