STATE OF MISSOURI at the relation of OSCAR H. JACOBSMEYER, Relator, v. THOMAS THATCHER, EUGENE TIGHE and EMIL F. WOHLSCH-LAEGER, Judges of the County Court of St. Louis County.—92 S. W. (2d) 640.

Court en Banc, March 18, 1936.

*Clark, Boggs, Peterson & Becker* for relator.

*John E. Mooney* for respondents.

HAYS, J.—Mandamus instituted by the relator as clerk of the Circuit Court of St. Louis County against respondents as judges of the county court of that county to compel the payment of a claimed arrearage in his official salary.

The issues tendered by our alternative writ issued herein may in substance be stated as follows: The relator was elected to the office at the general election in 1934, and assumed the duties thereof on January 7, 1935. The respondents, as constituting the county court, paid relator monthly out of the county treasury, for the first five months of 1935, compensation at the rate of $3000 a year, and paid nothing since. The relator claims a compensation at the rate of $5000 a year, payable in monthly installments, and seeks by this proceeding to compel payment of an accumulated arrearage of $2,183.31, remaining after the application of the payments mentioned above.

Relator's demand is asserted under Sections 11808, 11813, and 11820, Revised Statutes 1929. Relator also pleads that the Legislature has enacted a later law on the same subject (Laws 1933, p. 369), purporting to repeal those three sections and certain others, and to supplant them—all but one (11813)—with new sections; that in lieu of former Section 11808 a new section of the same number, but providing a different basis from that contained in the former section, for establishing the population of St. Louis County and the other counties for the purpose of ascertaining the compensation of county officers was enacted. Under the old section the population was established by multiplying the highest vote cast at the last previous general election by five; under the new, by taking the population as given in the last decennial census of the United States.

It is further pleaded that said Act of 1933, particularly as to Sections 11808 and 11786 thereof, is unconstitutional and void (1) because of being in violation of Article IX, Section 12 of the Constitution of the State, which provides that the General Assembly, by a law uniform in its operation, shall provide and regulate the fees of all county officers; and (2) because it violates Article IV of Section 28 of the Constitution which provides that no act shall contain more than one subject and the subject of the act shall be clearly expressed in the title thereto. As specifying the particulars of such violation of the organic law the charge in substance is:

Said act does not operate and regulate uniformly, because thereunder some of the circuit clerks of the State are compensated solely from the fees of their office, while others receive a fixed salary, and still others receive no compensation. It is stated that as a whole the law of 1933, did not repeal Sections 11808 and 11813, Revised Statutes 1929, and that relator is entitled thereunder to a $5000 salary as alleged above.

Issue was joined by general demurrer filed by respondents to the alternative writ, and the cause was briefed, argued and submitted on the issue so joined.

It was conceded in the oral argument that the population of St. Louis County as shown by the last decennial census of the government (the new basis) is 211,593 and on the vote basis 305,435; and that the only circuit clerk in the State who is not now receiving compensation for his services is relator. By counsel for respondents it was stated in oral argument, and not disputed by counsel for relator, that the respondents have at all times been, and still are ready and willing to pay the relator a salary of $3000 a year, in monthly installments of $250 each, out of the county treasury. It is unnecessary to state the specific theory on which respondents base such salary. It will suffice to say that it does not presuppose the unconstitutionality of the new act and rests on the assumption the new act fails to make any provision for compensating the relator, which is a conceded fact.

Former Section 11786 by its terms applied, so far as pertinent here, to all counties having a population of 7000 persons and less than 300,000, and provided that in counties having a population of 100,000 and less than 300,000 persons the clerk of the circuit court "should receive the sum of $3000, annually," for his services. Former Section 11813 provided that the salaries of the clerks coming within the purview of former Section 11786, and the salaries of their deputies and assistants, should be paid out of the county treasury in monthly installments. Former Section 11820 provided that in all counties and cities not within the limits of a county then or thereafter having a population of 300,000 inhabitants or more the circuit clerk of such county or city, might retain out of fees received for his services not exceeding $5000.

The vital section of the new act, Section 11786, supplants both old Sections 11786 and 11820. New Section 11786 in its terms is limited to apply to counties having a population ranging from less than 7500 persons to those having 70,000 and less than 80,000 persons, and specifies, according to the classification of the counties made therein, that "the aggregate amount of fees that any clerk of the circuit court . . . shall be allowed to retain for any one year's service shall not in any case exceed the amount" therein set out. The amounts range from $1000 for those in the lowest brackets to $3000 for those in the highest.

This court exercised its discretion in issuing the alternative writ on the assumption, induced by the allegations contained in the application therefor, that many circuit clerks were in like situation with relator; that is, a situation involving a number of circuit clerks which might (though not necessarily) have made the decision of the matter

before us one of exacting public importance. But such is not the case; relator alone is attacking the constitutionality of the act.

What right has relator to so assail it by this proceeding? The demurrer admits the pleaded facts stated above; but not conclusions of law in relation to the unconstitutionality of the new law. And if it did admit the latter, this court would not be bound by such admission. Every presumption is in favor of the validity of legislative acts. [Lewis-Sutherland, Stat. Const., sec. 497.]

"The propriety of declaring a statute unconstitutional in order to award a discretionary writ such as mandamus, has been gravely questioned. Clearly it should not be done where the right to the remedy, existing from questions of validity, is doubtful." Unless relator has some (legal) interest to be subserved by the suit he has no cause. of action; and it is always incumbent on a relator to allege and prove that he is so concerned in the cause of action averred, and is the party who has suffered injury by the acts of the respondent or his refusal to act. [State ex rel. v. Brand, 305 Mo. 321, 265 S. W. 989; see, also, on the latter proposition, State ex rel. Ins. Co. v. Blake, 241 Mo. 100, 144 S. W. 1094.] In other words, the relator must have a clear legal right to the performance by the respondent of the particular duty sought to be enforced (20 R. C. L. 1030). Absent any clear legal right of relator which is the duty of the respondent to grant, there is no substantial resting place to base mandamus, and in its final analysis the question for determination is whether the right of the aggrieved party is so free from doubt and the duty of the officer free and clear from any substantial question, that the writ should go to compel performance. [Ferris Ex. Leg. Rem., sec. 194.] More than that, even though a clear legal right has been established the court must look to the large public interest concerned and should act in view of all existing facts and with due regard to the consequences which might result. This is true especially where, as here, the writ, if granted would affect others not party to the suit; and where questions of grave importance are involved; or where the result might bring about confusion and disorder, or be unreasonable or injurious to the public; and in such cases the court should deny the writ, irrespective of the question of clear legal right of relator. [Id., secs. 196, 201, 202.]

It may be noted that the questioned law was enacted on May 2, 1933, along with several other acts passed at the same legislative session and relating to various county officers, fixing the basis for their compensation for discharging the duties of their respective offices; in one instance providing for county budget, in some instances combining offices, in others fixing compensation: Laws of 1933, pages 340, 338, 357, 369, 373, 375, 379 and 384. Each and every one of said acts, like new Section 11808 of the questioned act, fixed the last

previous decennial census of the government as the basis to be used for the purpose of ascertaining the compensation of the various county officers. To one of these acts an emergency clause is appended and is predicated upon the depleted condition of the funds belonging to such counties, and the decreased amount of taxes collectible.

■ Thus it is seen that the act assailed was passed by the Legislature some sixteen months before the relator was elected to office, and he, like every one else, was charged with knowledge of the law on the date it became effective. His election to office constituted no contract between him and the county. Through his election, and induction into office, he acquired and now has no vested right to salary— or to the office itself if the Legislature had chosen to abolish it. The office of clerk of the circuit court is not one created or provided in the Constitution; it is one authorized by that document to be created by the General Assembly and, once created, to be abolished or not at the will of that body. [State ex rel. McKittrick v. Bair, 333 Mo. 1, 63 S. W. (2d) 64; State ex rel. Crowe v. Evans, 166 Mo. 347, 66 S. W. 355.] Relator, being so conditioned, had and has no legal right, much less a *clear* legal right, to maintain this proceeding. And if his right were clear to a determination of that question, that right could in no proper sense be comparable in degree of importance to the very much greater and more important public interest involved. In this view of that matter there is no need to go into the details of the attack made on the constitutionality of the law. We think the general principles of law stated above are controlling here. So much for the constitutional question.

It is suggested that in order to make the new act conform to legislative intent not to leave St. Louis County unprovided for as regards compensation for its circuit clerk, we should by interpretation or construction hold that old Sections 11786, 11808 and 11820 are unaffected by the attempted repeal.

■ We are not pursuaded that the lawmakers intended to make any provision for St. Louis County in this particular act. First, because the language of the enactment is perfectly clear and unambiguous. In such case there is nothing to construe and no intent contrary to the evident intent can rationally or permissibly be implied. Second, if it was incumbent on the Legislature to make some provision regarding that county, it does not follow that that body should have done or intended to do so by this particular law. Several other counties are not so included but are provided for in other laws, some of which were enacted at the same session this one was. Are they by the same token necessarily objectionable to constitutional requirements? Third, to construe the act in accordance with relator's suggestions would reduce it to a state of utter impotency. Its parts are so mutually connected and interdependent as to warrant the belief

the Legislature intended them as a complete whole, and we so regard them. We cannot legislate. Only the Legislature can correct its manifest oversight in failing to make some provision by law for compensating the clerk of the circuit court of St. Louis County.

The relator suggests that if he is not entitled to a salary of $5000 a year, then he is entitled to retain (Sec. 11785, R. S. 1929) all the fees earned by his office; this, as it is said, because the new act does not provide for his compensation. We do not think that result follows. On the contrary, we think this suggestion is covered by what has been said above, but since it has been made we may observe further that the section last mentioned fixes the charges to be made and received by the clerk for the various items of service performed by him. Such fees, when he has received them, become the property of the county. He holds them as mere agent or trustee and must, under the penalty of his bond, account quarterly for all fees collected and not accounted for previously by him as provided by law, and pay the same into the county treasury "in excess of sums *permitted* (by law) to be retained for services and pay of deputies and assistants." [Sec. 11814, Laws 1933.]

For the reasons appearing above our alternative writ is quashed. All concur.