490

STATE OF MISSOURI, at the Information of JOHN RICE, Prosecuting Attorney of Newton County, Missouri, at the Relation of CLYDE ALLMAN, J. D. MCBRIDE, CARROLL CUMMINS, ELZA PADEN, GARLAND HUFFMAN and PRICE LANDRETH, Members of the Board of Directors of Midway Consolidated School District Number C-9, Appellants, v. DUARD HAWK, KLEBER DUNAWAY and LUTHER GREEN, Respondents, No. 41640—228 S. W. (2d) 785.

Division One, April 10, 1950.

*Justin Ruark, C. E. Ruyle* and *Wayne V. Slankard* for appellants.

*Birkhead & Teters* for respondents Dunaway and Green.

ASCHEMEYER, C.—This is a proceeding in quo warranto at the information of the Prosecuting Attorney of Newton County, Missouri, at the relation of the members of the Board of Directors of Midway Consolidated School District No. C-9 of Newton County against Duard Hawk, Kleber Dunaway and Luther Green who, prior to March 31, 1949, constituted the Board of Directors of Common School District No. 110 of Newton County, challenging the right of the defendant-respondents to hold and exercise the office of school directors of said Common School District. The trial court entered a judgment in favor of the defendant-respondents (hereafter referred to as respondents) adjudging to them the office of directors of said Common School District and plaintiff-relators (hereafter called appellants) have appealed from such judgment. The office of school director constitutes an ''office under this State'' and since this proceeding involves title to such an office, appellate jurisdiction is in this Court. Constitution of 1945, Art. V, Sec. 3; State ex Inf. Mitchell v. Heath, 345 Mo. 226, 132 S. W. (2d) 1001; State ex rel. Worsham v. Ellis, 329 Mo. 124, 44 S. W. (2d) 129.

The case was tried upon an agreed statement of facts which may be summarized as follows:

Appellants constitute the Board of Directors of Midway Consolidated School District No. C-9 which is a lawfully organized and existing consolidated school district of Newton County, Missouri. On and prior to March 31, 1949, Common School District No. 110 was a duly organized and existing common school district of said County of which respondents were duly constituted as members of the Board of Directors. The territory comprising said Common School District is adjacent to and borders upon territory comprising Midway Consolidated School District No. C-9 and Fairview Consolidated School District No. C-1.

On April 1, 1948, the qualified voters of said Common School District voted upon two propositions at a special election conducted under the provisions of Sec. 10484, R. S. 1939, as re-enacted and amended by Laws 1947, Vol. 1, p. 507, Mo. R. S. A. § 10484. One proposition was to release a specified portion of the territory of said Common School District for the purpose of annexation to Fairview Consolidated School District No. C-1. The other proposition was to release the remainder of the territory of said Common School District for the purpose of annexation to Midway Consolidated School District No. C-9. The two propositions were submitted on one ballot and both were defeated.

Within less than two years following this · special election, the Board of Directors of said Common School District, acting upon a petition signed by the requisite number of qualified voters, ordered a special meeting or special election of the qualified voters of said school district, to be held on March 31, 1949, at a designated time and place, to vote upon a proposition of annexing said entire Common School District to Midway Consolidated School District No. C-9. This special election or special meeting was called to be held under the provisions of Sec. 10484, supra. Proper notice of this special meeting or special election was given.

At a special meeting held on March 30, 1949, the Board of Directors of said Common School District adopted a resolution annulling and rescinding its order calling the special meeting or special election to be held on March 31, 1949, on the ground that such special election would be null and void under the provisions of Sec. 10484, supra, because it would be held within two years after the special election of April 1, 1948. Oral notification of this action of the Board of Directors was given to an unestimated number of voters who were informed that no special meeting or special election would be held on March 31, 1949.

There were approximately 87 qualified voters in said school district at that time. .Approximately 63 of these voters assembled at the appointed time and place on March 31, 1949. The Clerk of said school district called the assembled persons to order; read the resolution of rescission passed by the Board of Directors; caused Sec. 10484, supra, to be read; and caused to be read a legal opinion concerning the validity of such a special meeting or special election. A motion to adjourn was made and seconded, but without putting such motion to a vote, the Clerk of said school district declared the assembly adjourned. Approximately 24 of the voters left the place of voting immediately. The remainder proceeded to organize by electing a chairman and secretary. The chairman read and explained the proposition to be voted upon under the order of the Board of Directors convening the special meeting. Ballots were distributed and a vote was taken. There were 38 votes cast in favor of the proposition to annex said school district to Midway Consolidated School District No. C-9, and only one vote was against such annexation.

The result and proceedings of such election at the special meeting were certified to the Board of Directors of Midway Consolidated School District No. C-9 and to the Clerk of said Common School District. On May 5, 1949, the Board of Directors of Midway Consolidated School District No. C-9, at a regular meeting, unanimously voted to accept the territory comprising said Common School District and to annex such territory. The Clerk of said Common School District was notified of such action and written demand was made on respondents to relinquish all claim and title to the property, money, and records

belonging to said Common School·District. Respondents refused to relinquish such property and records on the ground that the special meeting and special election of March 31, 1949, was invalid; that said Common School District was and remained a body corporate and Common School District of which they are the qualified and acting Board of Directors with full right to the possession of all property and records owned by said Common School District; and that they have no duty to relinquish the same to appellants.

The only question presented upon this appeal is whether the second special election held at the special meeting conducted on March 31, 1949, was valid under the provisions of Sec. 10484, supra, in view of the fact that it was held within a period of two years after the special election held on April 1, 1948. This requires an interpretation of Sec. 10484, supra, the pertinent provisions of which are as follows:

"Whenever an entire school district, or a part of a district, whether in either. case it be a common school district, or a city, town or consolidated school district, which adjoins any. city, town, consolidated or village school district . . . desires to be attached thereto for school purposes, upon the reception of a petition setting forth such fact and signed by ten qualified voters of such district, the board of directors thereof shall order a special meeting or special election for *said purpose* by giving notice as required . . .; provided, however, that after the holding of *any such* special election, no other *such* special election shall be called within a period of two years thereafter. . . ." (Italics ours)

Appellants assert that the special election of March 31, 1949, was valid because Sec. 10484, supra, authorizes more than one kind of an election; that is, either for the annexation of an entire school district to another school district or for the release and annexation of only a part of a school district. It is argued that the election of March 31, 1949, for the annexation of the entire district, involved a substantially different proposition than the one submitted at the prior election so that the second election was not affected by the proviso that "no other such special election shall be called within a period of two years thereafter." Respondents argue that when an election has been held, under the statute, to change the boundaries of a school district, no other election affecting the boundaries of the school district can be held within two years thereafter.

■ It is conceded that no election can be held unless it is specifically provided ■ for by law. State ex rel. Edwards v. Ellison, 271 Mo. 123, 196 S. W. 751, 752. It is fundamental that in interpreting Sec. 10484, supra, our primary purpose is to ascertain and give effect to the intention of the Legislature. If possible, the statutory intent should be determined from the words which have been

used "considering the language honestly and faithfully to ascertain its plain and rational meaning and to promote its object and manifest purpose." City of St. Louis v. Senter Commission Co., 337 Mo. 238, 85 S. W. (2d) 21, 24; Artophone Corporation v. Coale, 345 Mo. 344, 133 S. W. (2d) 343, 347; Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S. W. (2d) 920, 925. Since no technical language is employed in the statute, the words used "will be construed in their ordinary sense and with the meaning commonly attributed to them, unless such construction will defeat the manifest intent of the Legislature." State ex rel. City of St. Louis v. Caulfield, 333 Mo. 270, 62 S. W. (2d) 818, 822; State ex rel. Gass v. Gordon, 266 Mo. 394, 181 S. W. 1016.

Appellants argue that the use of the word "such" is decisive in the statutory clause "no other *such* special election shall be called within a period of two years thereafter." They point out that the synonyms of "such" are "like, similar, of that kind, of the like kind" citing Strawberry Hill Land Corp. v. Starbuck, 124 Va. 71, 97 S. E. 362; Charles Behlen Sons' Co. v. Ricketts, 30 Ohio App. 167; and In re Watson's Will, 258 N. Y. S. 755, 144 Misc. 213. We may concede, as do respondents, that the word means "of the kind or sort previously indicated" (Webster's New International Dictionary, Second Edition) but we do not agree with appellants' further contention that the statutory language was intended to prohibit only a second election which is identical with, or at least substantially similar to, an earlier election so far as the specific proposal of annexation is concerned. The case of Schur v. Rural High School Dist. No. 1, 112 Kan. 421, 210 Pac. 1105 cited by appellants does not support their position. This case involved the construction of a statute authorizing the formation of rural high school districts which contained a provision that an election for the formation of such a district "shall not be called oftener than once in every two years." The election before the court involved a proposal to create a school district consisting of 70 sections of land. An earlier election involved a proposal to create a district consisting of approximately 82 sections of land, and the second proposal included only 17 sections which were involved in the earlier proposal. The court held that, under these circumstances, the second election involved a proposition which was substantially different from the one involved in the first election, so that the second election did not come within the statutory inhibition. In the instant case, both elections involved the entire territory comprised by the Common School District even though the two proposals involved different methods of annexation.

Appellants have overlooked other language employed in the statute. It is evident that the purpose of Sec. 10484, supra, is to permit the qualified voters of a school district to accomplish the annexation of all or a part of the district to an adjoining school

district. Upon compliance with the statutory requirements, "the board of directors thereof shall order a special meeting or special election for said *purpose.*" By its very terms, the statute recognizes only *one* purpose, ·which is to permit the annexation of territory of one school district to another, whether the proposal be to annex all or only a part of the school district.

The language of the proviso is "provided, however, that after the holding of *any such* special election, no other *such* special election shall be called within a period of two years thereafter." It has been held that the word "any", when used in such a context, is "all-comprehensive and the equivalent of 'every'." State ex rel. Randolph County v. Walden, 357 Mo. 167, 206 S. W. (2d) 979, 983; Wormington v. City of Monett, 356 Mo. 875, 204 S. W. (2d) 264. If we substitute synonyms for the words "any" and "such", the proviso would read: "provided, however, that after the holding of *every* special election *of the kind previously* ▉ *indicated,* no other special election *of the kind previously indicated* shall be called within a period of two years thereafter."

We think it is clearly the intent of the statute that when a special election has been held under its provisions no other special election may be held thereunder within a period of two years thereafter. The language of the statute is clear and unambiguous, and we have no right to read into it an intent which is contrary to the legislative intent made evident by the phraseology employed. State ex rel. Jacobsmeyer v. Thatcher, 338 Mo. 622, 92 S. W. (2d) 640; St. Louis Amusement Co. v. St. Louis County, 347 Mo. 456, 147 S. W. (2d) 667. Accordingly, we hold that the special election held at the special meeting on March 31, 1949, was invalid and of no force and effect.

The judgment of the Circuit Court of Newton County is affirmed. *Van Osdol* and *Lozier, CC.,* concur.

PER CURIAM:—The foregoing opinion by ASCHEMEYER, C., is adopted as the opinion of the court. All the judges concur.